ZEICHNER ELLMAN & KRAUSE LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-9100
WILLIAM T. MARSHALL, JR. (WM0626)
PHILIP S. ROSEN (PR0116)
KERRY A. DUFFY (KD6480)
Attorneys for Defendant Bank of America, N.A.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL D'ARGENZIO and BARBARA D'ARGENZIO,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, f/k/a COUNTRYWIDE BANK, FSB<br><br>Defendant. | Civil Action No. 1:09-cv-05604<br><br>Hon. Jerome B. Simandle<br><br>(Joel Schneider, U.S.M.J.)<br><br>**DECLARATION OF WILLIAM T. MARSHALL, JR.** |

WILLIAM T. MARSHALL, JR. declares, pursuant to 28 U.S.C. 1746, under penalties of perjury:

1. I am a partner with Zeichner Ellman & Krause LLP, attorneys for Defendant Bank of America, N.A. ("BOA"), successor to "Countrywide Bank, FSB" and improperly named in the above caption as Bank of America Corporation. I submit this Declaration, with the accompanying exhibits, in support of BOA's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking the dismissal of Plaintiffs' Complaint with prejudice in the above-captioned Action.

2.      I am fully knowledgeable of the proceedings heretofore had in this Action, and this Declaration pertains to and is based upon the pleadings, as well as written discovery made, documents exchanged, and depositions taken in this Action.

3.      On or about July 30, 2009, a foreclosure proceeding was commenced by BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, LP ("BAC"), holder of the mortgage loan described more fully in Paragraph 4 below, against Plaintiffs Carl D'Argenzio ("Carl" or "CDA") and Barbara D'Argenzio ("Barbara" or "BDA") (collectively the "Plaintiffs" or "D'Argenzios") in the Superior Court of New Jersey, Gloucester County – Chancery Division, Docket No. 40229-09. Annexed hereto, as **Exhibit 1,** is a true and accurate copy of the Complaint in Foreclosure filed by BAC's foreclosure counsel ("Foreclosure Complaint").

4.      In the Foreclosure Complaint, BAC seeks to enforce its rights under the Note and Mortgage dated November 6, 2007 ("2007 Mortgage Loan"), and to foreclose upon certain real property, located and commonly known as 105 Salem Avenue, Blackwood (Washington), New Jersey 08012 (the "Property"), securing the 2007 Mortgage Loan in the face amount of $229,500. (See, Exh. 1).

5.      On or about November 4, 2009, more than three months after BAC's filing of the Foreclosure Complaint, Plaintiffs filed a Complaint to commence this United States District Court, District of New Jersey proceeding against BOA ("Action").

6.     The 2007 Mortgage Loan, which is the subject of this Action, was made to Plaintiffs to pay off a prior mortgage loan in the amount of $172,000 which had been made solely to BDA in October 2005 (referred to herein as the "2005 Mortgage Loan"). The 2007 Mortgage Loan was made to enable the D'Argenzios to cash out equity in their home. As described below and admitted by Plaintiffs, the D'Argenzios took out additional cash of about $50,000 from the 2007 Mortgage Loan and used it for other purposes, including CDA's business.

7.     The 2005 Mortgage Loan, which is referred to more fully below and in the deposition transcripts of Plaintiffs, also had been made to refinance a prior mortgage with CIT. See, paragraphs 17 and 18 below.

8.     In this Action, the Complaint alleges violations of the Truth-in-Lending Act ("TILA"), the New Jersey Consumer Fraud Act (the "CFA"), common law fraud, and fraudulent misrepresentation, especially an alleged representation or promise by BOA, as an inducement for the Plaintiffs to close the 2007 Mortgage Loan, that after three months they would receive a fixed, lower rate mortgage. The Complaint seeks, *inter alia*, equitable relief and monetary damages, including personal injury damages proximately resulting from Defendant's conduct. Annexed hereto, as **Exhibit 2**, is a true and accurate copy of Plaintiffs Complaint.

9.     On May 21, 2010, BOA appeared as the proper named Defendant, through its undersigned counsel, and filed an Answer and Affirmative Defenses to the Complaint. A true and accurate copy of the Answer with Affirmative Defenses is annexed hereto as **Exhibit 3**.

10. On August 31, 2010, BOA served a Request to Produce Documents and Interrogatories upon Plaintiffs. True and accurate copies of the Requests for Documents and the Interrogatories are annexed hereto as **Exhibits 4 and 5**, respectively.

11. On or about October 1, 2010, BOA filed a motion for leave to file a Counterclaim against Plaintiffs. BOA's motion for leave was granted on November 8, 2010.

12. On November 10, 2010, BOA filed a Counterclaim against Plaintiffs. A true and accurate copy of BOA's Counterclaim is annexed hereto as **Exhibit 6**. By way of the Counterclaim, BOA seeks relief against Plaintiffs in the form of an equitable mortgage, should the Court, for any reason, invalidate, or grant Plaintiffs' request to rescind, the 2007 Mortgage.

13. On or about February 1, 2011, Plaintiffs filed an Answer to BOA's Counterclaim. A true and accurate copy of Plaintiffs' Counterclaim is annexed hereto as **Exhibit 7**.

14. On or about February 25, 2011, Plaintiffs served uncertified Answers to BOA's Interrogatories. A true and accurate copy of Plaintiffs' uncertified Answers to BOA's Interrogatories is annexed hereto as **Exhibit 8**.

15. Plaintiffs also did not serve a formal written response to BOA's Request to Produce. Plaintiffs did, however, produce documents to BOA in response to BOA's Request. Plaintiffs' documents did <u>not</u> contain any signed application, loan

commitment, or other evidence to substantiate the alleged promise or inducement in connection with the 2007 Mortgage Loan.

16.     On March 8, 2011, BOA served its Answer and Objections to Plaintiffs' Interrogatories. A true and accurate copy of the Answers and Objections to Plaintiffs' Interrogatories is annexed hereto as **Exhibit 9**.

17.     On March 28, 2011 the deposition of Barbara D'Argenzio was held. Annexed hereto as **Exhibit 10** is a true and accurate copy of relevant portions of BDA's March 28, 2011 Deposition Transcript, wherein Barbara provided the following background testimony and admissions:

    a. BDA confirmed that neither she nor her husband, Carl D'Argenzio ("CDA"), suffered from any medical condition in 2007 or 2008. Barbara also confirmed that Carl's only hospitalization was a condition caused by poison ivy, and nothing related to the present matter (Barbara D'Argenzio ("BDA") Dep. Tr. pp. 11, 12:1-11);

    b. Barbara admits, as her first transaction with a Countrywide entity, to signing in October 2005 an Application Fee & Authorization Disclosure submitted through her broker Cornerstone Mortgage, (marked as D'Argenzio ("DA") -1 for the 2005 Mortgage Loan. The Disclosure confirmed

       ized Plaintiff's desire to secure a fixed rate loan. (BDA Dep. Tr. pp. 18-19, Exh. DA-2)[1];

c. Barbara admits signing, on December 20, 2005, the Adjustable Rate Note in the amount of $172,000 with Countrywide (BDA Dep. Tr. p. 20, Exh. DA-2)[2];

d. Barbara admits signing and initialing the December 20, 2005 Mortgage (BDA Dep. Tr. pp. 24-25, Exh. DA-3);

e. Barbara admits signing the HUD Statement for the 2005 Mortgage Loan, and that CIT, the mortgagee, had been paid off on a prior loan (BDA Dep. Tr. p. 34, Exh. DA-6)[3];

f. As to the 2007 Mortgage Loan, Barbara admits her signature on a Uniform Residential Loan Application ("URLA") dated November 6, 2007 for a fixed rate loan (BDA Dep. Tr. p. 40, Exh. DA-7)[4];

g. Barbara admits receiving a Loan Commitment from Countrywide (BDA Dep. Tr. p. 48, Exh. DA-8) which, parenthetically, has no mention of any future loan, let alone a more favorable one[5];

---

[1] Most of the referenced deposition exhibits are not attached, however, they will be supplied in the reply papers if they become germane to this motion.
[2] See Footnote 1.
[3] See Footnote 1.
[4] See Footnote 1.
[5] See Footnote 1.

h. Significantly, Barbara stated she doesn't recall speaking with anyone from Countrywide prior to the closing of the 2007 Mortgage Loan (BDA Dep. Tr. pp. 49-50);

i. Barbara admits she and her husband took out the 2007 Mortgage Loan on November 6, 2007 to obtain $229,500 on November 6, 2007 (BDA Dep. Tr. pp. 50-51, Exh. DA-9) an amount far more than necessary to pay off her 2005 Mortgage Loan[6];

j. Barbara admits signing the Application and Interest Rate Agreement in connection with the 2007 Mortgage Loan; (BDA Dep. Tr. p. 52, Exh. DA-10) [7];

k. Barbara also admits she signed the Loan Application Disclosures in connection with the 2007 Mortgage Loan; (BDA Dep. Tr. p. 53, Exh. DA-11)[8];

l. Barbara admits executing the Statement of Borrower's Benefits in connection with the 2007 Mortgage Loan (BDA Dep. Tr. p. 56, Exh. DA-12)[9] which is devoid of any language promising a more favorable future loan;

---

[6] See Footnote 1.
[7] See Footnote 1.
[8] See Footnote 1.
[9] See Footnote 1.

m. Barbara admits signing the New Loan Payment Form in connection with the 2007 Mortgage Loan (BDA Dep. Tr. p. 56, Exh. DA-13)[10];

n. Barbara admits that she signed Notice of Right to Cancel and TILA Disclosures (marked as DA-14 and DA-15) and acknowledged receipt of copies of same in connection with the 2007 Mortgage Loan (BDA Dep. Tr. pp. 57-58) **See Exhibits 11 and 12**.

o. BDA admitted executing "Important Acknowledgment (concerning your loan) (admissions regarding loan execution) (income acknowledgment) in connection with the 2007 Mortgage Loan (BDA Dep. Tr. pp. 59 and 60, Exh. DA-16)[11];

p. Barbara acknowledged her and her husband's eventual difficulty in making payments after the loan closed in 2007 (BDA Dep. Tr. p. 64). A true and accurate copy of a relevant portion of account notes, marked and identified at the deposition of Dinorah Vasquez, discussed below, is attached as **Exhibit 13**;

---

[10] See Footnote 1.
[11] See Footnote 1.

q. BDA does not recall the circumstances of the genesis of the July 2, 2008 URLA, which is unsigned. (BDA Dep. Tr. p. 65, Exh. DA-18) [12]

r. Barbara does not remember if the information on the unsigned 2008 URLA was accurate (BDA Dep. Tr. pp. 67-68);

s. Barbara does not recall having conversations with anyone regarding the unsigned 2008 URLA (BDA Dep. Tr. p. 69);

t. Barbara recalls seeing a notice of incompleteness by the Bank pertaining to the 2008 loan application (BDA Dep. Tr. pp. 71-72). A true and accurate copy of the notice of incompleteness produced by BOA in discovery is annexed hereto as **Exhibit 14**.

18. On March 28, 2011 the deposition of Carl D'Argenzio was held. Annexed hereto as **Exhibit 15** is a true and accurate copy of relevant portions of the November 5, 2010 Deposition Transcript of Carl D'Argenzio wherein he provided the following background testimony and admissions:

a. Carl admitted that income in his line of business has fluctuated depending on the season and economy (Carl D'Argenzio ("CDA") Dep. Tr. p. 8);

b. Carl admits he had poor credit in 2005 (CDA Dep. Tr. 19);

---

[12] See Footnote 1.

c. Carl admits his poor credit affected ability to get a good mortgage loan rate (CDA Dep. Tr. 20);

d. Carl acknowledged his wife had better credit, and was the reason that she alone was the obligor on the 2005 loan (CDA Dep. Tr. 13);

e. Carl admitted he sought to participate in the financing on the Property in October 2007 (CDA Dep. Tr. 15);

f. Carl admits there was a "cash out" as a result of the refinance of the Property in 2007 (CDA Dep. Tr. 20);

g. Carl admits the borrowers took almost $50,000 away from the 2007 Mortgage Loan (CDA Dep. Tr. 21);

h. Carl admits that certain proceeds of the 2007 Mortgage Loan went towards paying a $10,000 penalty on the prior mortgage. In addition, proceeds of the refinance were used to pay off certain judgments and to buy a truck (CDA Dep. Tr. 22);

i. Carl admits signing the 2007 Note and relevant disclosures in connection with the 2007 Mortgage Loan (CDA Dep. Tr. 23);

j. Carl doesn't recall with whom he spoke at Countrywide prior to getting the 2007 Mortgage loan (CDA Dep. Tr. 29);

k. Carl has no recollection of conversations with anyone with Countrywide prior to getting the 2007 loan (CDA Dep. Tr. 30);

l. Carl doesn't recall that he had any hospital visits in 2007 and 2008 (CDA Dep. Tr. 69);

m. Carl doesn't recall previously seeing or signing Plaintiffs' Answers to Interrogatories (CDA Dep. Tr. 73) **(See Exh. 8)**;

n. Carl concedes that he does not have a medical condition referenced in the Complaint (CDA Dep. Tr. 78-79);

o. Carl concedes no proof of substantive business opportunities lost (CDA Dep. Tr. 96);

p. Carl does not recall seeing Notice to Produce at all (CDA Dep. Tr. 108-109) **(See Exh. 4)**.

19. On March 28, 2011, the deposition of Dinorah Vasquez ("Vasquez"), a current employee of BOA, was taken by Plaintiff's counsel. Annexed hereto as **Exhibit 16** is a true and accurate copy of the relevant portions of the March 28, 2011 Deposition Transcript of Vasquez wherein she provided the following testimony:

a. Vasquez is a Litigation Specialist with BAC. (Vasquez Dep. Tr. p. 7);

b. Vasquez confirmed that a search of the Bank's records pertaining to the 2007 Mortgage Loan does not reflect any

11

   guarantees that Plaintiffs would be placed in a future refinance loan at a lower rate (Vasquez Dep. Tr. p. 8);

c. Vasquez confirmed that Bank of America, N.A. is formerly known as Countrywide Bank, F.S.B. (Vasquez Dep. Tr. p. 10);

d. Vasquez testified that a "borrower's inquiry into wanting a loan would result in this application being <u>completed</u> and <u>submitted</u> by the borrower." (emphasis supplied) (Vasquez Dep. Tr. p. 22);

e. Vasquez testified that a lock-in agreement had to be returned signed and there was nothing in bank records to demonstrate the 2008 application had been signed (Vasquez Dep. Tr. p. 24);

f. Vasquez identified the Bank's records to include notes of telephone calls entitled "Work Action History Details" to refer to collection efforts on the 2007 Mortgage Loan. (Vasquez Dep. Tr. p. 13, Exh. P-2); Among the documents identified is a page of a telephone conversation with BDA, in which the following is recorded: "h/o std she is having diff. making feb payment because int rate is too high . .adv about rate red..h/o is doing a refi at the moment..adv if she doesn't qual. She would call back". **(See Exh. 13)**;

       g. Vasquez testified that the Bank's records show that the 2008 Application had been cancelled. (Vasquez Dep. Tr. p. 28).

20. On March 29, 2011, the deposition of Gregory Girone ("Girone"), a former employee of Countrywide, was held. Annexed hereto as **Exhibit 17** is a true and accurate copy of the relevant portions of the March 29, 2011 Deposition Transcript of Girone wherein he provided the following testimony:

       a. Girone admitted that he was aware that Barbara and Carl attempted to refinance the Property (Girone Dep. Tr. p. 7-8);

       b. Girone testified that Carl D'Argenzio never indicated to him that borrowers had been promised the ability to refinance the Countrywide loan (Girone Dep. Tr. p. 8);

       c. Girone confirmed that he was not able to do a loan for Carl (Girone Dep. Tr. p. 11);

       d. Girone recalled Carl because he was an animated personality (Girone Dep. Tr. p. 23);

       e. Girone himself had no power to withdraw, decline or end loan (Girone Dep. Tr. p. 24).

14

      I hereby declare that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                                                                    WILLIAM T. MARSHALL, JR. (WM0626)

DATED:       April 29, 2011