IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                              :
CARL D'ARGENZIO AND BARBARA   :      HON. JEROME B. SIMANDLE
D'ARGENZIO,                   :
                              :      Civil No. 09-5604 (JBS/JS)
          Plaintiffs,         :
                              :
     v.                       :           OPINION
                              :
BANK OF AMERICA CORPORATION   :
f/k/a COUNTRYWIDE BANK, FSB,  :
                              :
          Defendant.          :
                              :
```

APPEARANCES:

Matthew Benjamin Weisberg, Esq.
PROCHNIAK WEISBERG, PC
7 South Morton Avenue
Morton, PA 19070
     Attorney for Plaintiffs Carl D'Argenzio and Barbara
     D'Argenzio

William T. Marshal, Jr., Esq.
Kerry A. Duffy, Esq.
ZEICHER ELLMAN & KRAUSE LLP
103 Eisenhower Parkway
Roseland, NJ 07068
     Attorney for Defendant Bank of America Corporation f/k/a
     Countrywide Bank, FSB

**SIMANDLE**, District Judge:

I.  **INTRODUCTION**

     This matter is before the Court on the motion of Defendant
Bank of America Corporation f/k/a Countrywide Bank, FSB
("Defendant" or "Countrywide"), for summary judgment. [Docket
Item 36.] The instant action arose when Plaintiffs Carl
D'Argenzio and Barbara D'Argenzio ("Plaintiffs") entered into a

refinancing loan in 2007 with the Defendant and subsequently
attempted to refinance their mortgage loan again in 2008.   It is
undisputed that the Defendant is the holder of the note and
mortgage.

The Defendant argues that the Plaintiffs do not have
sufficient evidence to support their claims under the New Jersey
Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("NJCFA"), or the
Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. ("ECOA").
Specifically, the Defendant maintains that the Plaintiffs have
not alleged that they are members of a protected class under the
ECOA and that there is no evidence the Defendant engaged in
unlawful conduct sufficient to trigger liability under the NJCFA.
In addition, the Defendant argues that any oral promises
allegedly made by employees of the Defendant are insufficient to
serve as the basis of the Plaintiffs' claims as these oral
promises are barred by the Statute of Frauds.

The Plaintiffs oppose the Defendant's motion and argue that
there are genuine issues of material fact which preclude summary
judgment.   Specifically, the Plaintiffs contend that there is
sufficient evidence to show that the Plaintiffs were fraudulently
induced to enter the 2007 loan in violation of the NJCFA based on
promises of an early refinancing to more favorable terms.
Further, the Plaintiffs maintain that they have a valid claim
under the ECOA because the Plaintiffs never withdrew their 2008

2

loan application and never received any notice from the Defendant that their 2008 loan application was cancelled.

For the reasons expressed below, the Defendant's motion for summary judgment will be denied.

## II.  BACKGROUND

On or about December 20, 2005, Plaintiff Barbara D'Argenzio executed an Adjustable Rate Note in the amount of $172,000 with Countrywide. (Deposition of Barbara D'Argenzio (hereinafter "BDA Dep.") at 20:1-25:19).  The 2005 loan was Plaintiff Barbara D'Argenzio's first loan with Countrywide and was executed through an intermediary broker, Cornerstone Mortgage. (BDA Dep. at 18:2-5 and Declaration of William T. Marshall, Jr. ("Marshall Decl.") at ¶ 17b).

On or about November 6, 2007, the Plaintiffs jointly executed a Note and Mortgage in the amount of $225,839.45 at a 12.710% annual percentage rate. (Marshall Decl. Ex. 12, Truth in Lending Act Discl.)  The Plaintiffs entered into this loan in order to pay off the 2005 loan which was a negative amortization loan. (Deposition of Carl D'Argenzio (hereinafter "CDA Dep.") at 15:25-17:20, 18:25-19:13).  Plaintiff Carl D'Argenzio was unsatisfied with the 2005 loan because, despite timely paying a few hundred dollars in excess of the $600 per month mortgage payment, he discovered he was "paying more than my mortgagee [sic], but I owe more now than I did when I started." (CDA Dep.

3

17:9-20.)  Plaintiff Carl D'Argenzio began calling Countrywide and speaking to customer service agents because he did not understand why he owed so much money on the loan. (CDA Dep. 17:20-18:24.)

Prior to making the 2007 loan, Plaintiff Carl D'Argenzio spoke with Dave, an employee of the Defendant.  The Plaintiff stated in his deposition that he had several conversations with Dave prior to making the 2007 loan, and one conversation was of particular importance.  (CDA Dep. 32:23-33:5.)   Specifically:

> He [Dave] asked me if - if I would be able to afford $3,000 a month for no more than three months, maybe four at the longest.  And I [Carl D'Argenzio] said, "What is the reasoning?"
> And he [Dave] had asked me – or he had told me he said, "Well, listen, you're right there on the borderline.  I see you're trying to, you know, do your credit.  I see this was paid off, that was paid off" after they reviewed my credit.
> He [Dave] said, "Without no problems, if you could afford $3,000 a month for three to four months, I wouldn't have to do any other paperwork because all the paperwork would be current.  I could pull you right out of that mortgage and put you in a low interest," like, you know, six, whatever it was at that particular time, "and get you back on track, get you out of this loan . . .
> [A]t that particular time, I [Carl D'Argenzio] was okay.  I had a nice little cushion put away.  I was making good money, you know, and it was my busy season.  So, you know, no, I didn't have a problem.  I said, you know "I don't want to be in that forever."
> He [Dave] said, "No, no.  I'm telling you, we wouldn't have to go through all the paperwork.  I can come right to you, you know, sign the documents.  I have all the information I need in front of me.  We'll just pull your credit one more time.  We don't even need to get a – get the house appraised.  We could still use this appraisal.  It's within the time frame." . . .
> So at that time, he – I [Carl D'Argenzio] agreed.

4

```
I'm like, "Okay.  I can swing that."
      Q: You went forward with the loan?
      A: Yeah.  I went forward with the loan, and they
sent someone to my house . . .
```

(Dep. CDA 33:6-35:1.)[1]

After this conversation, the Plaintiffs signed the 2007

loan.  The Plaintiffs used the loan to pay off the 2005 loan and

---

[1]   The Defendant disputes whether Plaintiff Carl D'Argenzio
had this conversation prior to the 2007 loan.  Previously, in
Plaintiff Carl D'Argenzio's deposition, the following exchange
occurred:
Q: You don't recall any conversations from the – from the
2007 loan?
A: Okay.  Now your – prior?
Q: Prior to getting the loan.
A. Prior to getting the loan I'm in now?
Q: Right.
A: No.
Q: Okay.
A: No.
(CDA Dep. 30:5-13.)

     By relying on the above exchange in isolation, the Defendant
then argued to the court in its brief that there was no evidence
that the Plaintiff spoke with any Countrywide representative
prior to closing the 2007 loan.  Specifically, the Defendant
represented to the Court that "no contact or communication
existed" between the Plaintiffs and the Defendant prior to the
2007 loan closing. (Def.'s Br. in Supp. of Mot. for SJ at 15.)
     However, the testimony directly following this exchange
clearly establishes that the Plaintiff testified to having
several conversations with Countrywide representatives before
entering into the 2007 loan.  Moreover, the Plaintiff was able to
testify to one of these conversations in detail and stated on the
record the name and the phone number of the Countrywide
representative he spoke with.
     Accordingly, the Defendant's argument that no communication
occurred between the Plaintiffs and Countrywide prior to the 2007
closing ignores key elements of Plaintiff Carl D'Argenzio's
deposition.  Therefore, this argument is without merit and the
Court cautions Defense counsel to be mindful of their duty of
candor to the court in future filings. RPC 3.3.

received approximately $50,000 in cash from equity in the house. The Plaintiffs used the $50,000 to pay the $10,000 penalty assessed on the 2005 loan for paying the loan early and used the additional proceeds to satisfy Plaintiff Carl D'Argenzio's debts to improve his credit.  The Plaintiffs also purchased a used truck for Plaintiff Carl D'Argenzio's tree business.  (CDA Dep. 21:1-22:20.)

In 2008, the Plaintiffs were not automatically refinanced into a lower interest rate loan despite the Plaintiffs having satisfied their previous debt to improve their credit.  Plaintiff Carl D'Argenzio attempted to reach Dave at Countrywide but was unsuccessful.  (CDA Dep. 27:16-21).  Plaintiff Carl D'Argenzio reached out to Countrywide over several months but his calls were not returned. (CDA Dep. 27:16-21 and 28:2-4.)

In 2008, the Plaintiffs did not go to another mortgage company for assistance and instead applied again to Countrywide seeking to refinance their home in the amount of $239,540.  (BDA Dep. at 66:4-24.)  However, there is no evidence in the record that the 2008 loan application was ever signed by the Plaintiffs. (BDA Dep. at 70:2-7.)

A Notice of Incompleteness was sent to the Plaintiffs on July 2, 2008, regarding their 2008 loan application. (Marshall Decl. Ex. 14.)  The Notice of Incompleteness indicates that six items were missing from the Plaintiffs' loan application

6

including: Bank statements for the previous 2 months, most recent pay stub, 2006 and 2007 income tax returns, 2006 and 2007 W-2 forms, proof of homeowners insurance and signed disclosures.  It is disputed whether the Plaintiffs sent Countrywide the requested information.  Plaintiff Barbara D'Argenzio stated that she watched her husband, Carl, fax the requested documents to Countrywide several times. (BDA 72:15-16.)  Plaintiff Carl D'Argenzio states that he sent Countrywide all the documents Countrywide requested numerous times by FedEx, email or fax. (CDA 110:23-111:23.)  Plaintiff Carl D'Argenzio stated that he called Countrywide numerous times to inquire about why the 2008 loan application had not been processed and every time he was told that Countrywide was missing a document, despite Plaintiff Carl D'Argenzio having sent the document multiple times.  (CDA 111: 6-112:1.) Countrywide denies receiving any of the requested documents from the Plaintiffs.

The July 2008 loan application was never approved.  The record is unclear what occurred after the July 2008 application was filed by the Plaintiffs.[2]  The Plaintiffs received a phone

---

[2]  The Plaintiffs' First Amended Complaint asserts many facts about the Plaintiffs reaching out to Countrywide, speaking to several Countrywide employees and setting up a closing date for the July 2008 loan which never occurred.  However, these allegations are unsupported by the record before the court.  The depositions of the Plaintiffs submitted by the Defendant are incomplete and are only portions of the depositions.  The Plaintiff did not supplement the record with the full deposition transcripts or affidavits of the Plaintiffs.  Therefore, the

call from Benjamin Brown, an employee of Countrywide, who left a message on the Plaintiffs answering machine stating that the loan application was accepted.  However, it is clear that the July 2008 loan never came to fruition and the loan application was cancelled. (Deposition of Dinorah Vasquez at 28:24-25.)[3]

The Plaintiffs also sought the assistance of Mr. Girone in a local Countrywide office in Sewell, NJ, in an attempt to refinance the 2007 loan. (CDA Dep. 27:8-12; Deposition of Gregory Girone (hereinafter "Girone Dep." at 7:22-25.)  Mr. Girone said he was unable to refinance the Plaintiffs' 2007 loan and referred him to another company for assistance. (Girone Dep. 9:11-17.) There is no evidence in the record to suggest that the Plaintiffs sought financing from this additional recommended broker.

In July, 2009, after unsuccessfully attempting to refinance their loan, the Plaintiffs defaulted and foreclosure proceedings were initiated in state court.  After the foreclosure proceedings began, the Plaintiffs filed the instant action alleging violations of the Truth-in-Lending Act, the New Jersey Consumer

court has a limited and incomplete record before it.

[3]  The parties in their briefs discuss a letter sent to the Plaintiffs in September, 2008, by the Defendant in which the Defendant states the Plaintiffs withdrew their application.  This letter is not attached as an exhibit by either of the parties and the Plaintiffs vehemently dispute ever receiving this letter. However, since this letter is not attached as part of the record before the court, it will not be considered in analyzing the instant summary judgment motion.

Fraud Act and common law fraud.  The Plaintiffs then amended their complaint based on discovery and now pursue two causes of action.  First, the Plaintiffs allege violations of the New Jersey Consumer Fraud Act based on the 2007 loan.  Second, the Plaintiffs allege violations of the Equal Credit Opportunity Act arising out of the Defendant's cancellation of the 2008 loan application without notice to the Plaintiffs.

The Defendant filed the instant motion for summary judgment seeking to dismiss Plaintiffs' complaint with prejudice. Specifically, the Defendant maintains that the Plaintiffs have not alleged that they are members of a protected class under the ECOA and that there is no evidence the Defendant engaged in unlawful conduct sufficient to trigger liability under the NJCFA. In addition, the Defendant argues that any oral promises allegedly made by employees of the Defendant are insufficient to serve as the basis of the Plaintiffs' claims as these oral promises are barred by the Statute of Frauds.

The Plaintiffs oppose this motion and argue that there are genuine issues of material fact which preclude the granting of summary judgment.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 323.

10

However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

**B.  New Jersey Consumer Fraud Act**

In order to prevail on a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a Plaintiff must satisfy three elements. The Plaintiff must demonstrate (1) unlawful conduct on the part of the Defendant; (2) an ascertainable loss on the part of the Plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  N.J.S.A. § 56:8-19; Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).

There is a genuine issue of material fact as to whether the Defendant violated the NJCFA during the 2007 loan application. There is evidence in the record that the Plaintiffs were told by an employee of the Defendant, Dave, that the 2007 loan would only be effective for 3-4 months at which point the loan would be refinanced at a lower interest rate as long as Plaintiff Carl D'Argenzio's credit report improved.  A rational jury could find that this misrepresentation was made with the intent to fraudulently induce Plaintiffs to enter into a high interest loan

and that this misrepresentation was unlawful conduct by the
Defendant.

As a result of this misrepresentation, the Plaintiffs found
themselves committed to a loan which they could not afford over a
long period of time, which has resulted in ascertainable loss
since the Plaintiffs now face foreclosure of their marital home.
While the Plaintiffs did receive the $50,000 benefit of the 2007
loan, the evidence suggests that the primary purpose of cashing
out this equity was to enable the Plaintiffs to pay off their
existing debts and improve their credit in order to refinance in
three to four months.  Without being able to refinance, a jury
could find that the Plaintiffs suffered ascertainable loss in
paying a significantly higher interest rate for an elongated
period of time.  Moreover, a rational fact finder could conclude
that the Defendant's subsequent conduct in failing to return
phone calls and repeatedly requesting multiple documents which
Plaintiffs had supplied hindered the refinancing of the 2007 loan
and is additional evidence of the unlawful conduct of the
Defendant and harm to the Plaintiffs.

The Defendant's argument that the Plaintiffs cannot rely on
the oral statements of its employee pertaining to the 2007 loan
because such statements are barred by the statute of frauds is
without merit.  The statute of frauds requires that an agreement
to give a mortgage loan must be in writing to be enforceable.

12

<u>Leeper v. Weintraub</u>, 273 N.J. Super. 532, 535 (App. Div. 1994) and N.J.S.A. 25:1-13.  However, the Plaintiffs are not seeking to enforce the alleged oral promise of the Defendant's employee, David, to refinance their loan after three to four months. Rather, the Plaintiffs are offering this statement as evidence of the Defendant's unlawful conduct in fraudulently inducing the Plaintiffs to enter into the 2007 loan agreement.  The statute of frauds is therefore inapplicable.

The Defendant also argues that consideration of these oral statements goes beyond the four corners of the 2007 loan agreement and are therefore inadmissible under the parol evidence rule.  This argument fails for two reasons.  First, the Defendant has not attached the 2007 loan document as an exhibit to its motion and therefore, the 2007 loan document is outside of the record currently before the court and therefore its express language cannot be considered on this motion.  Second, the Plaintiff is not offering these statements to change the meaning of the 2007 loan document.  As discussed above, the Plaintiffs are offering these oral statements as proof of the Defendant's alleged unlawful conduct in fraudulently inducing the Plaintiffs to enter into the 2007 loan agreement.  Therefore, the parol evidence rule does not apply to bar admission of these statements.

Giving all favorable inferences to the Plaintiffs, there is

13

a genuine issue of material fact as to whether the Defendant
violated the NJCFA in entering into the 2007 loan agreement with
the Plaintiffs.  A rational jury could find, based on the
evidence in the record, that the Defendant unlawfully induced the
Plaintiffs to enter into the 2007 loan agreement by orally
misrepresenting to the Plaintiffs that the loan would be
refinanced to a lower interest rate in 3 to 4 months; the
Plaintiffs suffered ascertainable loss by being trapped in a high
interest loan for an elongated period of time despite their
efforts to refinance and eventually forced into foreclosure; and
that the Plaintiffs' loss was the result of the Defendant's
fraudulent misrepresentations.

Therefore, summary judgment is inappropriate and will be
denied as to the Plaintiffs' NJCFA claim.

### C.  Equal Credit Opportunity Act

The Defendant argues that the Plaintiff's claim pursuant to
the Equal Credit Opportunity Act ("ECOA") should be dismissed
because the Plaintiff's have failed to allege they are members of
a protect class.  However, the Plaintiffs base their ECOA claim
on the Defendant's failure to provide notice of the cancellation
of their 2008 loan application and the reason for this adverse
action as required by 15 U.S.C. § 1691(d).

The ECOA provides:

**(d) Reason for adverse action; procedure applicable;
"adverse action" defined**

14

> (1) Within thirty days (or such longer reasonable time as
> specified in regulations of the Board for any class of
> credit transaction) after receipt of a completed
> application for credit, a creditor shall notify the
> applicant of its action on the application. . . .
> (6) For purposes of this subsection, the term "adverse
> action" means a denial or revocation of credit, a change
> in the terms of an existing credit arrangement, or a
> refusal to grant credit in substantially the amount or on
> substantially the terms requested. Such term does not
> include a refusal to extend additional credit under an
> existing credit arrangement where the applicant is
> delinquent or otherwise in default, or where such
> additional credit would exceed a previously established
> credit limit.

15 U.S.C. § 1691(d)(1) and (6).

Section (d) of the ECOA provides broad protection to all applicants, not only those who belong to a protected class.  The ECOA was originally enacted in 1974 to prohibit discrimination in credit transactions.  However, the ECOA was amended in 1976  "to require creditors to furnish written notice of the specific reasons for adverse action taken against a consumer."  Fischl v. General Motors Acceptance Corp., 708 F.2d 143, 146 (5th Cir. 1983).  This amendment provided broad protection to all consumers, not only those credit applicants who were members of a protected class.  Congress explained that this strict notice requirement was:

> a strong and necessary adjunct to the antidiscrimination
> purpose of the legislation, for only if creditors know
> they must explain their decisions will they effectively
> be discouraged from discriminatory practices. Yet this
> requirement fulfills a broader need: rejected credit
> applicants will now be able to learn where and how their
> credit status is deficient and this information should
> have a pervasive and valuable educational benefit.

15

Fischl, 708 F.2d at 146 (citing S. Rep. No. 94-589, 94th Cong., 2d Sess., *reprinted in* 1976 U.S. Code Cong. & Admin. News, pp. 403, 406).  In addition, the ECOA broadly defines "applicant" as "any person who applies to a creditor . . ." without requiring membership in a protected class.  15 U.S.C. § 1691a(b).

Courts that have addressed this issue have squarely held that plaintiffs alleging a violation of the notice requirement of the ECOA pursuant to subsection (d) were not required to allege discrimination or be members of a protected class.  See Polis v. American Liberty Financial, Inc., 237 F. Supp. 2d 681, 688-89 (W.D. Va. 2002)(denying motion to dismiss plaintiffs' claim alleging a violation of the ECOA because the plaintiffs did not allege they were members of a protected class and instead finding the ECOA requires notice of adverse actions be sent to all consumers); Cannon v. Metro Ford, Inc., 242 F. Supp. 2d 1322, 1331 ("Subsection (d) [of the ECOA] requires a creditor to provide written notification to all credit applicants, regardless of whether the applicant is a member of a protected class"); and Costa v. Mauro Chevrolet, Inc., 390 F. Supp. 2d 720, 729-29 (N.D. Ill. 2005)(holding that failure to provide notice of an adverse action to the credit applicant is actionable under the ECOA without regard to allegations of discrimination).

Therefore, the Plaintiffs' claim will not fail because they have not alleged they are part of a protected class.

16

In this case, there are genuine issues of material fact regarding the processing and cancellation of the July 2008 loan application.  The Defendant maintains that the Plaintiffs withdrew their loan application in September 2008.  The Plaintiffs deny withdrawing their loan application.  The Defendant argues that the loan application was unsigned and incomplete.  The Plaintiffs maintain that the application was complete because they submitted all the requested documents to the Defendant multiple times and were vigilant in communicating with the Defendant.

A rational fact finder could conclude, based on the Plaintiffs' testimony, that the Plaintiffs had submitted all the required documents and were actively awaiting the outcome of the application.  A jury could also find that the Plaintiffs did not withdraw their application based on the Plaintiffs' testimony. If a jury finds that the Defendant denied the Plaintiffs' July 2008 loan application, then under the ECOA, the Plaintiffs were entitled to receive notice within 30 days of this adverse action and a statement of reasons for the denial.  Since these items were not received by the Plaintiffs, a jury could conclude that the Defendant violated the ECOA.

Therefore, summary judgment is inappropriate and will be denied as to the ECOA claim.

**IV.   CONCLUSION**

For the reasons discussed above, the Defendant's motion for summary judgment will be denied.  There are genuine issues of material fact regarding the completeness of the July 2008 loan application and whether the Defendant engaged in unlawful conduct by allegedly inducing the Plaintiffs to enter into the 2007 loan agreement and misrepresenting to the Plaintiffs that the 2007 loan would be eligible for refinancing at a lower interest rate in three to four months as long as Plaintiff Carl D'Argenzio improved his credit.  Giving all favorable inferences to the Plaintiffs based on the evidence in the present record, a rational jury could find that the Plaintiffs were fraudulently induced to enter into the 2007 loan agreement and suffered ascertainable loss as a result of the Defendant's unlawful conduct.  In addition, a rational jury could conclude that the July 2008 loan application was complete and was cancelled by the Defendant without sending any notice to the Plaintiffs in violation of the ECOA.

Therefore, summary judgment will be denied.  The accompanying Order will be entered, and this case will be set for trial.


**November 21, 2011**                         **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 United States District Judge

18