ZEICHNER ELLMAN & KRAUSE LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-9100
WILLIAM T. MARSHALL, JR. (WM0626)
PHILIP S. ROSEN (PR0116)
KERRY A. DUFFY (KD6480)
Attorneys for Defendant Bank of America, N.A.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL D'ARGENZIO AND BARBARA D'ARGENZIO,<br><br>                              Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, f/k/a COUNTRYWIDE BANK, FSB<br><br>                              Defendant. | Civil Action No. 1:09-cv-05604<br><br>Hon. Jerome B. Simandle<br><br>(Joel Schneider, U.S.M.J.)<br><br>**NOTICE OF MOTION FOR RECONSIDERATION OF THE NOVEMBER 21, 2011 ORDER DENYING SUMMARY JUDGMENT** |

TO:    Matthew B. Weisberg, Esq.
       Attorney for Plaintiffs
       Prochniak Weisberg, P.C.
       7 South Morton Avenue
       Morton, PA 19070

       Attorney for Plaintiffs Carl D'Argenzio and Barbara D'Argenzio

SIR:

Defendant Bank of America, N.A. ("BANA") will move before this Court on Monday, January 3, 2012, at the United States District Courthouse, located at Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Room 1050, Camden, NJ 08101, New Jersey, for an Order, pursuant to Fed. R. Civ. P. 60(a) and

Local Civ. R. 7.1(i), granting BANA's motion for reconsideration of the Order dated November 21, 2011 ("Order") and summary judgment to BANA dismissing Count I (ECOA) and Count II (New Jersey Consumer Fraud Act) of the First Amended Complaint, and for such other relief as the Court may direct.

In support of its motion, BANA will rely upon the previous submissions and filings by the parties in connection with BANA's Motion for Summary Judgment and Plaintiffs' Opposition to Summary Judgment the accompanying Memorandum of Law in Support of the Motion for Reconsideration submitted herewith. A copy of the Reply Declaration of William T. Marshall, Jr. dated July 11, 2011 is annexed to these papers for the Court's ready reference.

Oral argument is hereby requested.

A proposed form of Order is submitted herewith.

DATED:      Roseland, New Jersey
            December 5, 2011

                        ZEICHNER ELLMAN & KRAUSE LLP
                        Attorneys for Defendant
                        Bank of America, N.A.

                    BY: _____
                        WILLIAM T. MARSHALL, JR. (WM0626)
                        PHILIP S. ROSEN (0116)
                        KERRY A. DUFFY (KD6480)

ZEICHNER ELLMAN & KRAUSE LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-9100
WILLIAM T. MARSHALL, JR. (WM0626)
PHILIP S. ROSEN (PR0116)
KERRY A. DUFFY (KD6480)
Attorneys for Defendant Bank of America, N.A.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CARL D'ARGENZIO and BARBARA D'ARGENZIO,<br><br>                              Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, f/k/a COUNTRYWIDE BANK, FSB<br><br>                              Defendant. | Civil Action No. 1:09-cv-05604<br><br>Hon. Jerome B. Simandle<br><br>(Joel Schneider, U.S.M.J.)<br><br>**DECLARATION OF WILLIAM T. MARSHALL, JR.** |

WILLIAM T. MARSHALL, JR. declares, pursuant to 28 U.S.C. 1746, under penalties of perjury:

1.     I am a partner with Zeichner Ellman & Krause LLP, attorneys for Defendant Bank of America, N.A. ("BOA"), successor to "Countrywide Bank, FSB" and improperly named in the above caption as Bank of America Corporation. I submit this Declaration, with the accompanying exhibits, in support of BANA's motion for reconsideration pursuant to Fed. R. Civ. P. 60 and L. Civ. R. 7.1(i) seeking Reconsideration of the November 21, 2011 Order and decision which denied summary judgment

2.      I am fully knowledgeable of the proceedings heretofore had in this Action, and this Declaration pertains to and is based upon the pleadings, as well as written discovery made, documents exchanged, and depositions taken in this Action.

3.      A true and accurate copy of the Reply Declaration, with exhibits, of William T. Marshall, Jr. filed with the Court on July 11, 2011 as Document # 49 on the Court docket, is annexed hereto as **Exhibit 1** for the Court's ready reference.

I hereby declare that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WILLIAM T. MARSHALL, JR. (WM0626)

DATED:      December 5, 2011

Exhibit
1

ZEICHNER ELLMAN & KRAUSE LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-9100
WILLIAM T. MARSHALL, JR. (WM0626)
PHILIP S. ROSEN (PR0116)
KERRY A. DUFFY (KD6480)
Attorneys for Defendant Bank of America, N.A.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CARL D'ARGENZIO and BARBARA D'ARGENZIO,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, f/k/a COUNTRYWIDE BANK, FSB<br><br>Defendant. | Civil Action No. 1:09-cv-05604<br><br>Hon. Jerome B. Simandle<br><br>(Joel Schneider, U.S.M.J.)<br><br>**REPLY DECLARATION OF WILLIAM T. MARSHALL, JR.** |

WILLIAM T. MARSHALL, JR. declares, pursuant to 28 U.S.C. 1746, under penalties of perjury:

1. I am a partner with Zeichner Ellman & Krause LLP, attorneys for Defendant Bank of America, N.A. ("BOA"), successor to "Countrywide Bank, FSB" and improperly named in the above caption as Bank of America Corporation. I submit this Reply Declaration, with the accompanying exhibits, in support of BOA's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking the dismissal of Plaintiffs' Complaint with prejudice in the above-captioned Action.

2.     I am fully knowledgeable of the proceedings heretofore had in this Action, and this Declaration pertains to and is based upon the pleadings, as well as written discovery made, documents exchanged, and depositions taken in this Action.

3.     On or about May 16, 2011, while BOA's motion for summary judgment was pending, Plaintiffs filed a First Amended Civil Complaint ("Amended Complaint") in the United States District Court, District of New Jersey proceeding against BOA. Annexed hereto, as **Exhibit 18,** is a true and accurate copy of the Amended Complaint.

4.     The Amended Complaint alleges violations of the Equal Credit Opportunity Act, 15 U.S.C. 1691 ("ECOA"), and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et. seq. (the "NJCFA").   Plaintiffs' claims of violations of TILA and HOEPA and common law fraud, and fraudulent misrepresentation, which were set forth in the original Complaint have been abandoned by Plaintiffs. The Amended Complaint seeks, inter alia, equitable relief, rescission, and monetary damages, including personal injury damages proximately resulting from Defendant's conduct.  (See Exh. 18)

5.     On May 30, 2011, BOA filed an Answer and Affirmative Defenses to the Amended Complaint. A true and accurate copy of the Answer with Affirmative Defenses is annexed hereto as **Exhibit 19.**

6.      At the Plaintiffs' depositions held on March 28, 2011, a copy of the Mortgage Loan Commitment for their 2007 Mortgage Loan was marked as exhibit D'Argenzio – 8.  The Mortgage Loan Commitment, dated October 23, 2007, states in pertinent part at Section B(2) that "no change in this commitment is valid unless approved by the lender in writing." There is no language in the Mortgage Loan Commitment containing any promise of a future loan.  A true and accurate copy of the Mortgage Loan Commitment is annexed hereto as **Exhibit 20**.

7.      At the deposition of BOA's representative, Dinorah Vasquez, held on March 28, 2011, a copy of Withdrawal Letter dated September 8, 2008 sent by BOA to Plaintiffs was marked as exhibit P-3.  The Withdrawal Letter states "This letter confirms that you recently withdrew your application for a mortgage loan with Countrywide Bank, FSB."  A true and accurate copy of the Withdrawal Letter is annexed hereto as **Exhibit 21**.

8.      On March 28, 2011, the deposition of CDA was held. Annexed hereto as **Exhibit 22** is a true and accurate copy of relevant portions of CDA's March 28, 2011 Deposition Transcript setting forth the complete contents of the telephone message left by "Ben" to Plaintiffs which stated that he was "Just checking in. I haven't heard you guys – from you in a while" (CDA Tr. 52:10-12), and wherein "Ben" advised that the "approval" would be cancelled in a couple of days if he did not hear back from them. (CDA Tr. 52:17-20).

3

I hereby declare that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WILLIAM T. MARSHALL, JR. (WM0626)

DATED:      July 11, 2011

4

Exhibit
18

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**WEISBERG LAW, P.C.**
MATTHEW B. WEISBERG
ATTORNEY ID: 85570
7 SOUTH MORTON AVE.
MORTON, PA 19070
610-690-0801

| | |
|---|---|
| Carl and Barbara D'Argenzio,<br>Individually & as H/W<br>105 Salem Avenue<br>Blackwood, NJ 08012<br><br>                Plaintiffs,<br><br>    v.<br><br>Bank of America Corporation<br>f/k/a Countrywide Bank, FSB<br>100 N Tryon St<br>Charlotte, NC 28255<br><br>    And<br><br>John Does 1-10<br>                Defendants. | CIVIL ACTION NO.: 09-5604<br><br><br>JURY OF TWELVE (12) JURORS DEMANDED |

## FIRST AMENDED CIVIL ACTION COMPLAINT

**I.    Preliminary Statement**

1.    This action seeks, *inter alia*:

    a.    Actual and compensatory damages including but not limited to:
        i.    Return of all closing and related costs, including appraisal fee and pre-paid finance charges;
        ii.    Payment of all related profits, including spread between promised and received terms over the life of the loan;
        iii.    Emotional distress, and pain and suffering; and
        iv.    Such other further direct or consequential damages as are known or may become known during discovery or at trial.

    b.    Equitable/injunctive relief;
        i.    Stay of or relief from any pending collection action or activity, including foreclosure, judgment or sheriff's sale/possession;

    ii.     Rescission and voiding of any mortgage or like interest;

    iii.    Waiver/forgiveness of any claimed debt/arrearage; and

    iv.    Credit repair.

  c.    Statutory penalties;

  d.    Exemplary relief, including treble and punitive damages; and

  e.    Attorneys fees and costs.

2.    Individually, and jointly and severally, this action requests relief for, *inter alia*, the facts stated or inferred, which are averred upon information and belief or averred as believed will become known in discovery or at trial.

3.    This action may rely on the "Discovery Rule" and the Doctrine(s) of Equitable Tolling/Fraudulent Concealment.

4.    Each and every averment herein is incorporated throughout as if fully set forth at length.

**II.    Jurisdiction and Venue**

5.    Jurisdiction in this Honorable Court is based on federal question and diversity conferred by, respectively, the Equal Credit Opportunity Act, 15 USC 1691, *et seq*, pursuant to 15 USC 1691e(f) and  28 U.S.C. §1331 and 1332, respectively; supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

6.    Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principal place of business, is incorporated or does business here, or the subject of this action is situated within this district.

**III.    Parties**

7.      Plaintiffs, Carl and Barbara D'Argenzio (collectively "Mortgagors" or "D'Argenzio"),
are adult individuals and husband and wife, and are currently residing at the above-captioned
address.

8.      Defendant, Bank of America  Corporation, formerly known as Countrywide Bank, FSB,
("Originating Lender" or "Countrywide"), is a duly incorporated corporation under and by virtue
of the laws of the State of North Carolina, maintaining a principal place of business at the above
captioned address, at all times material acting as the subject originating lender.

9.      Defendants, John Does 1-10, is a moniker for individuals and entities currently unknown
but will be substituted when known, as affiliated, associated or liable hereunder for the reasons
set forth below or inferred therefrom.  Each of these parties are incorporated as Defendants in
each and every Count and averment listed above and below.

**IV.    Operative Facts**

10.     At all times material, Plaintiffs were borrowers and mortgagors subject and party to a
mortgage and note (collectively "loan"), dated November 6, 2007 ("Closing").

11.     In or around 2007, Plaintiffs were placed into a negative amortization loan by Tim Miller
and Cornerstone (non-parties).

12.     After determining that the negative amortization loan was not in their best interests, as
the principal of the loan continually increased, Plaintiffs contacted Countrywide, the lender in
the negative amortization loan, for a refinance.

13.     Plaintiffs spoke with Countrywide's employee,  Defendant, John Doe, believed named
Dave ("Dave"), regarding a refinance.

3

14.     Dave stressed to Plaintiffs that the most important thing was for Plaintiffs to get out of the negative amortization loan.

15.     Dave informed Plaintiffs that they were on the borderline to be considered in the "A Bracket," which would insure Plaintiffs the best interest rate.

16.     Since Plaintiffs did not yet qualify for the "A Bracket" rate and Dave stressed the need to be out of the negative amortization loan quickly, Dave recommended Plaintiffs signing a no document, high interest, and high payment loan.

17.     Under this proposed loan, Plaintiffs interest rate would be fixed at 12.5% with monthly payments of $2,407.27

18.     Dave promised that Plaintiffs would only be in this loan for three to four (3-4) months.

19.     Based on Plaintiffs' income and savings, Plaintiffs knew that they would be able to afford the payments for the 3-4 months Dave promised.

20.     Dave told Plaintiffs that after they made the 3 months payments, Plaintiffs would qualify for the "A Bracket" interest rates, which at the time were approximately 6%.

21.     Dave further advised that after the 3 months of payments, Plaintiffs would automatically be pulled out of the high interest loan and placed in a lower interest loan since Countrywide already had the necessary documents.

22.     Based on Dave's representations, Plaintiffs went through with the closing on the high interest loan.

23.     Plaintiffs timely made their payments under the high interest loan.

24.     After 3 months, Dave did not contact Plaintiffs or automatically refinance Plaintiffs out of the high interest loan.

4

25.    Plaintiffs attempted to contact Dave for the promised refinance.

26.    Plaintiffs attempted to contact Dave for approximately two (2) months without Dave returning calls.

27.    At that point Plaintiffs were advised that Dave no longer worked for Countrywide.

28.    Then Plaintiffs were contacted by another Countrywide employee, Defendant, John Doe, believed named Russ ("Russ").

29.    After initially discussing Plaintiffs' refinance, Plaintiffs did not hear back from Russ, despite their attempts to contact him.


**July, 2008 Application for Re-financing**

30.    Plaintiffs were then contacted by Countrywide employee, Defendant, John Doe, believed named Greg ("Greg").

31.    Greg advised Plaintiffs that they had been pre-approved for a new loan with settlement to be within thirty (30) days, an interest rate of approximately 6.375%, monthly payments of $1,494.42.

32.    Greg told Plaintiffs that he needed a few documents to complete plaintiffs' application including a bank statement and a W2, which Plaintiffs provided.

33.    In or around July 2008, Greg scheduled a closing for Plaintiffs, however Plaintiffs advised Greg that they were going to be on vacation at the New Jersey shore.

34.    Greg advised Plaintiffs that the vacation would not be a problem and that Countrywide would come to Plaintiffs' vacation home for the closing.

35.     Plaintiffs waited for a Countrywide employee to appear for the closing yet no agent or employee appeared.

36.     Plaintiffs attempted to contact Greg without success.

37.     Plaintiffs were not given an explanation as to why the closing did not occur.

38.     Plaintiffs were later advised that Greg no longer worked at Countrywide.

39.     Plaintiffs were next contacted by a Countrywide employee, Defendant, John Doe, believed named Ben ("Ben").

40.     Ben advised Plaintiffs that they were pre-approved for an FHA loan with a fixed rate of 6.375%, and that Plaintiffs needed to supply a letter from their accountant about a tax return extension.

41.     Plaintiffs supplied the requested information and attempted to contact Ben about the loan only to be advised that Ben no longer worked at Countrywide.

42.     Plaintiff, Carl D'Argenzio, contacted a Countrywide employee, Defendant, John Doe, Greg Girone ("Girone"), in person in an attempt to straighten out the problems with the loan.

43.     Prior to meeting with Girone, Plaintiff, Barbara D'Argenzio, had been contacted by a woman employee, Defendant, Jane Doe, who advised Plaintiff that she was pre-approved for a refinance.

44.     Carl D'Argenzio gave Jane Doe's name and number to Girone and Girone attempted to contact Jane Doe.

45.     When Jane Doe got on the phone, she advised Carl D'Argenzio and Girone that she did not know anything about Plaintiffs nor had she spoken with Barbara D'Argenzio.

6

46.    Girone contacted his manager and they both promised Plaintiff that they would investigate Plaintiffs' loan and contact Plaintiffs.

47.    After that meeting, Plaintiffs did not hear from Girone or his manager.

48.    At or around this time, Plaintiffs began to struggle to continue to make the monthly payments on the high interest loan.

49.    Plaintiffs contacted Countrywide regarding their struggles on new found hardship as Plaintiff's, Carl D'Argenzio, business had begun to suffer from the economic recession.

50.    Plaintiffs were advised that Countrywide would only help Plaintiffs after they had fallen three (3) months behind on their mortgage.

51.    Unable to afford the high interest mortgage any longer, Plaintiffs fell behind.

52.    Plaintiffs contacted Countrywide, who advised Plaintiffs that it was sending a packet for Plaintiffs to fill out regarding their hardship.

53.    Despite multiple phone calls and promises to send the packet, Plaintiffs never received the packet.

54.    Plaintiffs then received a call from an employee of Countrywide who told Plaintiffs that she was their answer.

55.    Due to unrelated car issues, Plaintiffs were unable to return the above phone call for approximately three (3) days.

56.    When Plaintiffs were able to return the above call, Plaintiffs were advised that their case had been closed due to Plaintiffs failure to respond within thirty (30) days.

57.     Defendant has alleged to Plaintiffs during discovery in this matter that it sent to Plaintiffs on September 8, 2008, a notice confirming plaintiffs were withdrawing their loan application. Plaintiffs deny ever receiving this letter.

58.     At all times material, Plaintiffs relied on the Dave's representations as to Plaintiffs' ability to refinance out of the high interest loan.

59.     Plaintiffs would not have signed the high interest loan had they not been promised a refinance due to the fact that they knew they would not be able to afford the high payments.

60.     Countrywide knew that Plaintiffs would not be able to afford the high interest loan yet originated and funded the loan.

61.     At all times material, Plaintiffs relied on Countrywide's employees promised refinances and acted accordingly by supplying all the information requested.

62.     As outlined above, Countrywide continually promised to refinance Plaintiffs yet failed to follow through with a closing without explanation to Plaintiffs.

63.     Plaintiffs were harmed by Countrywide's failure to act according to its representations as Plaintiffs were forced to pay the high interest loan for longer than the promised three (3) months.

64.     Additionally, Plaintiffs were harmed by the resulting default as their credit has been negatively affected.

        D.     Injuries

65.     As a result of the foregoing, Plaintiffs have suffered injuries including, but not limited to: (1) pain and suffering, including emotional distress and embarrassment; (2) damage to credit rating and credit impairment; (3) financial loss(es), including lost opportunity(ies) and equity; (4) loss of use of the premises; (5) attorneys fees and court costs; and (6) such other and further

injuries as will be determined in discovery or at trial, including aggravation of a pre-existing condition(s).

### V.     Causes of Action

68.     Plaintiffs are natural people provided with the right to defer payment of debts or to incur payment of debt and defer payment, and the credit offered or extended was primarily for personal, family or household purposes.

69.     As a matter of law, Plaintiffs and Defendant are "persons."

70.     Originating Lender regularly extends consumer credit, six (6) or more loans per year, two (2) or more high cost mortgages per year, and one (1) or more of such high cost mortgages through a broker.

71.     This loan was a federally related mortgage loan, made by a federally-insured depository lender, is HUD-related, and was intended to be sold on the secondary market or to creditors who make or invest more than one million dollars a year in residentially secured loans.

### COUNT I
### Equal Credit Opportunity Act ("ECOA")

72.     Plaintiffs are "applicants" as the term is defined in the ECOA, 15 USC §1691a(b).

73.     Defendant is within the category of "creditors" as the term is defined in the ECOA, 15 USC §1691a(e).

74.     Plaintiffs completed a credit application and/or one was completed on her behalf, applied to Defendant for credit in connection with their purchase of the subject vehicle from Defendant.

75.     Under the provisions of the ECOA, Defendants were required to give notice of their decision on that credit application to Plaintiffs within 30 days of receipt.

9

76.     In the event that such credit was approved, the provisions of ECOA permitted Defendant to provide that notice by means other than written communication, 15 USC §1691(d)(1) and (2).

77.     Defendant informed Plaintiffs that they had been approved for credit in the form of the July, 2008, refinancing transaction described herein.

78.     Contrary to the Defendant's September 8, 2008, letter, Plaintiffs never withdrew their application and never learned the reason otherwise that they did not qualify for credit in the July, 2008 refinancing.

79.     Defendant's revocation of credit for the July, 2008, refinancing, constituted an "adverse action" as the phrase is defined in the ECOA, 15 USC §1691(d).

80.     After taking adverse action on Plaintiffs' credit application for the subject vehicle, Defendant was required to provide written notice of that adverse action within 30 days of taking that action, 15 USC §1692a.

81.     Defendant failed or refused to provide that written notice to Plaintiffs in violation of 15 USC §1692a.

82.     Defendant, at all times, was required to maintain such records or other data relating to such loans as may be necessary to evidence compliance with ECOA or to enforce any action pursuant to the authority under the Act, 15 USC §1692b.

83.     Upon information and belief, Defendant failed or refused to maintain records of that transaction which would fulfill the provisions of ECOA, in violation of 15 USC §1691b.

## COUNT II
### New Jersey Consumer Fraud Act (NJCFA)

84.     When defendant made representations to plaintiffs that they would refinance plaintiffs out of the November, 2007, 12.5% loan in six months, they knew this was false and that it was just a sales tactic to bait plaintiffs into an onerous, but for defendant, profitable loan.

85.     ·Plaintiffs, having no sophistication in lending matters and trusting that one of the most well known mortgage lenders advertising extensively in the popular media would not lie to them, relied upon defendant's representations.

86.     Likewise, when defendant appeared to make good on its representation of refinancing plaintiffs into a lower priced loan, albeit later than six months time from the November, 2007, origination, plaintiffs again relied upon defendant's representations.

87.     Upon information and belief, defendant knew during the entire course of events described herein that plaintiffs either did not qualify for the promised refinancing or that defendant simply lied to plaintiffs about the prospect or intent to refinance them to keep plaintiffs in a loan most profitable to defendant regardless of the financial detriment to plaintiff.

88.     Defendant furthered it misrepresentations just described by attempting to give cover to these misrepresentations by the device of a fabricated or unsent September 8, 2008, letter purporting to represent confirmation of plaintiffs' withdrawal of their loan application for the July 2008 loan.

89.     Upon information and belief derived from Countrywide's documented forging of letter documents in litigation in the 3rd circuit, plaintiffs believe the September 8, 2008, letter was fabricated by defendant to give cover to its scheme to keep plaintiffs in the 2007 loan and deny them a refinancing to a lower cost loan.

11

90.     As a result of defendant's misrepresentations, plaintiffs are now in default of their loan and in imminent danger of losing their home.

91.     As a result of defendant's misrepresentations, plaintiffs are obligated to pay for thirty (30) years nearly twice monthly for principal and interest what they would have paid if granted the July, 2008 loan terms. Thereby, plaintiffs have incurred actual damages of the differential between the monthly payment for the loan they received and the one that was promised to them.

92.     At all times material, the actions above described with regards to the 2007 loan and 2008 loan application constituted unconscionable commercial practices, deception, fraud, false pretense, false promises, misrepresentations, and/or the knowing, concealment, or omission of material facts in violation of the New Jersey Consumer Fraud Act, N.J. Stat. §56:8-2, *et seq.*, and liable therefore to Plaintiffs.

## VI.     Prayer for Relief

WHEREFORE, Plaintiffs requests this Honorable Court enter judgment in their favor and against Defendants, individually, and jointly and severally, as follows:

A.  Under 15 U.S.C. § 169le(b), and Plaintiffs therefore pray for actual damage, punitive damages up to $10,000, and reasonable attorney fees and costs.

B.  Under the NJ CFA, for actual damage in excess of seventy-five thousand dollars ($75,000), treble damages, and reasonable attorney fees and costs plus such other and further relief as this Honorable Court deems necessary and just.

WEISBERG LAW, P.C.

12

/s/ Matthew B. Weisberg, Esquire
MATTHEW B. WEISBERG, ESQUIRE
Attorney for Plaintiff

Dated: May 16, 2011

Exhibit
19

ZEICHNER ELLMAN & KRAUSE LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-9100
WILLIAM T. MARSHALL, JR. (WM0626)
PHILIP S. ROSEN (PR0116)
KERRY A. DUFFY (KD6480)
Attorneys for Defendant Bank of America, N.A.,
  f/k/a Countrywide Bank, FSB, improperly sued
  as Bank of America Corporation

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL D'ARGENZIO and BARBARA D'ARGENZIO,<br><br>                              Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, f/k/a COUNTRYWIDE BANK, FSB<br><br>                              Defendant. | Civil Action No. 1:09-cv-05604<br><br>Hon. Jerome B. Simandle<br><br>(Joel Schneider, U.S.M.J.)<br><br>**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT BANK OF AMERICA, N.A. TO FIRST AMENDED CIVIL ACTION COMPLAINT** |

Defendant Bank of America, N.A., f/k/a Countrywide Bank, FSB ("Bank of America"), improperly sued herein as Bank of America Corporation, by its undersigned attorneys, Zeichner Ellman & Krause LLP, files its Answer with Affirmative Defenses to the First Amended Civil Action Complaint ("Complaint") of Plaintiffs, Carl D'Argenzio and Barbara D'Argenzio (collectively "Plaintiffs"), upon information and belief, as follows:

## I.    Preliminary Statement

1.    Bank of America denies the allegations contained in paragraph 1(a) – (e) of the Complaint as this paragraph pleads the relief sought by Plaintiffs and the averments are not statements of fact to which a response is required.  To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

2.    Bank of America denies the allegations contained in paragraph 2 of the Complaint as this paragraph pleads the relief sought by Plaintiffs and the averments are not statements of fact to which a response is required.  To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

3.    Bank of America is not required to answer the allegations contained in paragraph 3 of the Complaint as they are not statements of fact to which a response is required.  To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

4.    In response to the allegations in paragraph 4 of the Complaint, Bank of America incorporates its responses to each and every averment incorporated or referred to by Plaintiff in said paragraph.

## II.    Jurisdiction and Venue

5.    Bank of America admits the allegations contained in paragraph 5 of the Complaint to the extent they are factual and avers that it is not required to answer allegations or statements which are not factual in nature.

2

6.      Bank of America admits that it does business within the State of New Jersey, however, denies the remainder of the factual allegations contained in paragraph 6 of the Complaint.

**III.    Parties**

7.      Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8.      Bank of America, a citizen of North Carolina, denies the allegation contained in paragraph 8 of the Complaint.  Bank of America, N.A., f/k/a Countrywide Bank, FSB ("Bank of America") was improperly sued herein as Bank of America Corporation.

9.      Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint.

**IV.    Operative Facts**

10.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint. Bank of America, except admits that Plaintiffs became borrowers on a Mortgage and Note in the amount of $229,500.00 executed by Plaintiffs on or about November 6, 2007 and that the loan is secured by the property located at 105 Salem Avenue, Blackwood, Washington Township, New Jersey.

11.     Bank of America is without knowledge or information sufficient

to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint.

12.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

13.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations, which are vague, contained in paragraph 13 of the Complaint.

14.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint.

15.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the

Complaint.

19.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint.

21.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint.

26.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint.

27.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint.

28.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint.

29.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

**July, 2008 Application for Re-financing**

30.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint.

31.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint.

32.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint.

6

33.   Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint.

34.   Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint.

35.   Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint.

36.   Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint.

37.   Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint.

38.   Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

39.   Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint.

40.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint.

41.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint.

42.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint.

43.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint.

44.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint.

45.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Complaint.

46.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint.

47.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 of the Complaint.

48.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48 of the Complaint.

49.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 of the Complaint.

50.    Bank of America denies the allegations contained in paragraph 50 of the Complaint.

51.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint.

52.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52 of the Complaint.

53.    Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of the Complaint.

54.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54 of the Complaint.

55.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55 of the Complaint.

56.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56 of the Complaint.

57.     Bank of America is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57 of the Complaint, except admits that it avers that its records show that on or about September 8, 2008 it sent a notice to Plaintiffs, and refers to the notice itself for its contents.

58.     Bank of America denies the allegations contained in paragraph 58 of the Complaint.

59.     Bank of America denies the allegations contained in paragraph 59 of the Complaint.

60.     Bank of America denies the allegations contained in paragraph 60 of the Complaint.

61.     Bank of America denies the allegations contained in paragraph 61 of the Complaint.

62.     Bank of America denies the allegations contained in paragraph 62

of the Complaint.

63.     Bank of America denies the allegations contained in paragraph 63 of the Complaint.

64.     Bank of America denies the allegations contained in paragraph 64 of the Complaint.

**D.      Injuries**

65.     Bank of America denies the allegations contained in paragraph 65 of the Complaint.

66.     This number is missing within the Complaint.

67.     This number is missing within the Complaint.

**V.      Causes of Action**

68.     Bank of America avers that the allegations contained in paragraph 68 of the Complaint plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

69.     Bank of America avers that the allegations contained in paragraph 69 of the Complaint plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

70.     Bank of America avers that the allegations contained in paragraph 70 of the Complaint plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is

required, each such averment is denied.

71.     Bank of America avers that the allegations contained in paragraph 71 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

<u>COUNT I</u>

**Equal Credit Opportunity Act ("ECOA")**

72.     Bank of America avers that the allegations contained in paragraph 72 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

73.     Bank of America avers that the allegations contained in paragraph 73 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

74.     Bank of America denies each and every allegation contained in Paragraph 74 of the Complaint.

75.     Bank of America avers that the allegations contained in paragraph 75 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

76.     Bank of America avers that the allegations contained in paragraph 76 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

77.     Bank of America avers that the allegations contained in paragraph 77 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

78.     Bank of America avers that the allegations contained in paragraph 78 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

79.     Bank of America avers that the allegations contained in paragraph 79 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

80.     Bank of America avers that the allegations contained in paragraph 80 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

81.     Bank of America avers that the allegations contained in paragraph 81 of the Complaint as this paragraph plead a conclusion of law to which no response is

required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

82.     Bank of America avers that the allegations contained in paragraph 82 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

83.     Bank of America avers that the allegations contained in paragraph 82 of the Complaint as this paragraph plead a conclusion of law to which no response is required. To the extent any of these averments may be deemed averments of fact to which a response is required, each such averment is denied.

## COUNT II

### New Jersey Consumer Fraud Act (NJCFA)

84.     Bank of America repeats, and makes part hereof, its responses to the allegations contained in paragraphs 1 through 83 of the Complaint as if fully set forth at length herein.

85.     Bank of America denies the allegations contained in paragraph 85 of the Complaint.

86.     Bank of America denies the allegations contained in paragraph 86 of the Complaint.

87.     Bank of America denies the allegations contained in paragraph 87 of the Complaint.

88.    Bank of America denies the allegations contained in paragraph 88 of the Complaint.

89.    Bank of America denies the allegations contained in paragraph 89 of the Complaint.

90.    Bank of America denies the allegations contained in paragraph 90 of the Complaint.

91.    Bank of America denies the allegations contained in paragraph 91 of the Complaint.

92.    Bank of America denies the allegations contained in paragraph 92 of the Complaint.

**VI.    Prayer for Relief**

Bank of America denies that Plaintiffs are entitled to the relief sought in their Prayer for Relief.

<u>**AFFIRMATIVE DEFENSES**</u>

<u>**FIRST AFFIRMATIVE DEFENSE**</u>

The Complaint fails to state a claim against Defendant upon which relief may be granted.

<u>**SECOND AFFIRMATIVE DEFENSE**</u>

The Plaintiffs do not have standing to assert a claim under ECOA because they are not in the protected category of individuals covered by the Act.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for injunctive relief against Defendant and, therefore, should be dismissed with prejudice.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim under New Jersey's Consumer Fraud Act.

### FIFTH AFFIRMATIVE DEFENSE

There is a foreclosure proceeding commenced by BAC Home Loans Servicing, LP, on behalf of Defendant herein against Plaintiffs in the Superior Court of New Jersey, Gloucester County, F40229-09, commenced prior to this proceeding, and in which the Plaintiffs herein are named as defendants and whom have defaulted, and in which the claims asserted in this Action are germane.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs defaulted under the subject loan and, therefore, are not entitled to any relief as against Defendant.

### SEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred by the applicable statutes of limitations.

### EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred by the Statute of Frauds.

### NINTH AFFIRMATIVE DEFENSE

Defendant breached no contractual, common-law or statutory obligations owed to Plaintiffs and, therefore, the Complaint should be dismissed with prejudice.

16

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs have not suffered any damage or loss by reason of any acts or omissions of Defendant and, therefore, the Complaint should be dismissed with prejudice.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Defendant are barred, in whole or in part, by the doctrines of estoppel, waiver and/or ratification.

### TWELFTH AFFIRMATIVE DEFENSE

Any harm and/or damages allegedly sustained by Plaintiffs resulted from their own acts or omissions, or the intervening/superseding action of third parties, for whom Defendant is not responsible.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs should be barred from recovery to the extent they received any benefit from the actions alleged in the pleadings.

### FOURTEENTH AFFIRMATIVE DEFENSE

Defendant acted, at all times, in good faith and pursuant to the express terms of the subject loan documents.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the absence of any compensable damages.

DATED:        May 30, 2011

ZEICHNER ELLMAN & KRAUSE LLP
Attorneys for Defendant Bank of America, N.A.,
f/k/a Countrywide Bank, FSB, improperly sued
as Bank of America Corporation

By:   WILLIAM T. MARSHALL, JR. (WM0626)
PHILIP S. ROSEN (PR0116)
KERRY A. DUFFY (KD6480)
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-9100

18

CM/ECF LIVE - U.S. District Court for the District of New Jersey                                    Page 1 of 1

## Answers to Complaints/Initiating Documents
1:09-cv-05604-JBS -JS D'ARGENZIO et al v. BANK OF AMERICA, N.A. et al
ARBITRATION, RULE16, SCHEDO

U.S. District Court

District of New Jersey [LIVE]

### Notice of Electronic Filing

The following transaction was entered by MARSHALL, WILLIAM on 5/30/2011 at 3:31 PM EDT and filed on 5/30/2011

**Case Name:**           D'ARGENZIO et al v. BANK OF AMERICA, N.A. et al
**Case Number:**         1:09-cv-05604-JBS -JS
**Filer:**               BANK OF AMERICA, N.A.
**Document Number:** 43

**Docket Text:**
**ANSWER to Amended Complaint by BANK OF AMERICA, N.A..(MARSHALL, WILLIAM)**

**1:09-cv-05604-JBS -JS Notice has been electronically mailed to:**

MATTHEW BENJAMIN WEISBERG     mweisberg@ppwlaw.com

WILLIAM T. MARSHALL , JR     wmarshall@zeklaw.com

**1:09-cv-05604-JBS -JS Notice will not be electronically mailed to::**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1046708974 [Date=5/30/2011] [FileNumber=5061533-0
] [4cc6642d6df31827ec85984a62dc2904f24e4d1d07c20a9bbdd3de1a7df830a6556
473a56873b6f7d113125c03259a00b1ab20b35802b4d2bc97930ec6f5ddd0]]

Exhibit
20

Redacted

Countrywide Home Loans, Inc., itself or as
agent for Countrywide Bank, FSB.

Branch #: 0005324
0 NESHAMINY INTERPLEX, #210
TREVOSE, PA 19053
(215)633-2100
By Fax No.: (215)639-3769

## MORTGAGE LOAN COMMITMENT

Borrower(s) Name CARL A. D'ARGENZIO
                  BARBARA A. D'ARGENZIO

Mailing Address
                  , BLACKWOOD, NJ 08012

Property Address
                  , BLACKWOOD, NJ 08012-1465

Commitment Date 10/23/2007          Expiration Date 11/13/2007

We are pleased to inform you that your application for a mortgage loan on the above-captioned property (the
"Property") has been approved subject to the terms and conditions below. Please read this commitment carefully. As
used in this commitment, the words "you" and "your" refer to each Borrower signing this commitment. The word
"Lender" refers to
Countrywide Home Loans, Inc., itself or as agent for Countrywide Bank, FSB.

A.  PROVISIONS OF YOUR MORTGAGE LOAN

1.  Type of Loan:    [X] Fixed Rate        [ ] Balloon              [ ] Adjustable Rate
                     [ ] First Lien/Purchase Money
                     [X] First Lien/Refinance

2.  Amount of Loan: $ 229,500.00

3.  Term 40    years

4.  Amount Financed: $     219,870.95

5.  Commitment Fee: $        0.00

6.  Interest Rate:

[ ] You have not locked the interest rate. You have selected a prevailing rate option. Your loan
    has been approved at an ASSUMED INTEREST RATE of          % and discount points of
              % or $              . Unless you have locked your interest rate at an
    earlier date by delivering to Lender a fully executed Lock-In Agreement along with any applicable fee,
    your interest rate will be determined as follows:

THE INTEREST RATE WILL BE A RATE ESTABLISHED BY THE LENDER IN ITS DISCRETION BUT
IN NO EVENT LATER THAN MIDNIGHT OF THE THIRD BUSINESS DAY BEFORE CLOSING.

YOU HAVE THE RIGHT TO DEMAND THAT LENDER ADVISE YOU, EITHER ORALLY OR IN
WRITING, OF THE INTEREST RATE, DISCOUNT POINTS AND FEES ONCE THEY ARE FIXED BY
THE LENDER.

The following figures are for illustrative purposes only. They reflect the rate now in effect, NOT
necessarily the rate you will pay at closing, which will be established as indicated in this commitment.

CONV/FHA/VA
• New Jersey Mortgage Loan Commitment
2C831-NJ (09/01/xx)                          Page 1 of 5                    Initials:
                                                                           B D

D'Argenzio000056-P





EXHIBIT D'Argenzio-8
DATE 3.28.11      CMB

BANA 902

CONFIDENTIAL

Redacted

Redacted

LOAN #: ███2386

Annual Percentage Rate:                                    %

Finance Charge:                        $

Payment Schedule:
  Monthly Payment:              $                    (principal and interest)
  Payment Due Date:             The                  of each month
  Balloon Payment Amount:       $                    (if applicable)

[X] Your loan has been approved at a locked-in interest rate.

Interest Rate:                                  11.750  %

Discount:                                        3.000  %

Adjustable Rate Margin:                          0.000  % (if applicable)

See your Lock-In Agreement for additional terms and conditions about your rate.

[ ]  According to the terms of your Adjustable Rate Note, the monthly principal and interest payment and the
     Annual Percentage Rate on your loan may vary after closing if the index changes. See the Adjustable
     Rate Mortgage disclosure you received earlier for more information, including an example of the
     payment terms that would result from an increase.

7.  Escrow Payments

[ ]  In addition to your monthly principal and interest payments, your monthly payment will include an
     additional amount equal to at least 1/12 of the following items checked:

[ ]  Real estate and similar taxes

[ ]  Hazard and flood insurance required

[ ]  Mortgage insurance

B.  THE COMMITMENT EXPIRATION DATE SHOWN ABOVE IS THE DATE BY WHICH YOUR LOAN MUST
    CLOSE. IF YOUR LOAN IS A REFINANCE, ANY REQUIRED RESCISSION PERIOD MUST BE COMPLETED
    AND FUNDS MUST BE DISBURSED PRIOR TO THE COMMITMENT EXPIRATION DATE SHOWN ABOVE.

    1.  This commitment is valid only until the expiration date shown above. This means you must be sure your loan
        is closed by that date. If your loan does not close by that date, Lender has no further obligations and need not
        refund any fees you have paid except as provided herein or required by law.

    2.  Any request for a change to this commitment must be made to Lender in writing. No change in this
        commitment is valid unless approved by lender in writing.

    3.  The Commitment Fee is non-refundable except as required by New Jersey Department of Banking
        regulations N.J.A.C. 3:1-16.6(a) and (b) and as provided under applicable Federal law.

    4.  Lender may update any credit, financial or property information at any time at your and/or the seller's
        additional expense.

C.  DOCUMENTATION NECESSARY TO COMPLETE CLOSING

    THE FOLLOWING CONDITIONS MUST BE MET AND DOCUMENTATION DELIVERED TO LENDER OR
    LENDER SHALL NOT BE OBLIGATED TO COMPLETE CLOSING. In addition, at closing you will be required to
    sign loan documents which Lender reasonably requires for this type of loan. Your seller (if this is not a refinance
    loan) may also have to execute certifications to Lender and/or its successors and assigns and agree to provide
    certain additional items which Lender requires. UNLESS SPECIFICALLY STATED OTHERWISE, YOU MUST
    PROVIDE THE FOLLOWING DOCUMENTATION TO LENDER NOT LATER THAN THREE (3) BUSINESS
    DAYS PRIOR TO CLOSING AND ALL SUCH DOCUMENTATION MUST MEET LENDER'S STANDARDS:

D'Argenzio 000057-P

CONV/FHA/VA
• New Jersey Mortgage Loan Commitment
2C831-NJ (09/01)                                    Page 2 of 5                    Initials: BD

Redacted

CONFIDENTIAL

BANA 903

Redacted

LOAN #: ███2386

1. **TITLE INSURANCE.** Title insurance in the amount of $ 229,500.00 _____ is required. You must provide Lender with a title binder or title insurance company, acceptable in form and content to Lender's attorneys, indicating that it will issue a Lender's Title Insurance Policy showing that Lender will have a valid first lien on the property without exception once the mortgage is filed of record.

2. ☐ **SURVEY.** If checked, you must provide a survey of the Property acceptable in form and content to Lender and the title insurance company issuing title insurance on the Property.

3. **HAZARD INSURANCE POLICY.**

   a. You must provide Lender with an original hazard insurance policy written by a carrier acceptable to Lender, and proof indicating that the premium for the first year has been paid, no later than three (3) business days prior to closing. A binder or memorandum is not acceptable. The policy must be in effect at the time of closing and have a mortgagee clause naming Lender.

   b. ☐ If checked, the Property is a condominium. You must provide Lender with an acceptable certificate of insurance no later than three (3) business days prior to closing. The certificate must name Lender as the insured mortgagee.

4. **FLOOD INSURANCE POLICY.** A flood hazard policy must be provided if the property is located in a flood hazard area.

   a. ☒ If checked, flood insurance is not required. If the Property is designated as being in a flood hazard area at any time in the future, Lender or its successors and/or assigns may obtain a flood insurance policy for you. You will be advised by letter that flood insurance has been obtained and you will be responsible to pay for it.

   b. ☐ If checked, flood insurance is required in the amount of the loan or the maximum amount available. A copy of the application for flood insurance must be provided to Lender no later than three (3) business days prior to closing along with proof indicating that the premium for the first year has been paid. The mortgagee clause must name the Lender.

   c. ☐ If checked, the Property is a condominium. You must provide an acceptable certificate of insurance naming the Lender as the insured mortgagee on the master flood policy.

5. ☐ **MORTGAGE INSURANCE.** If checked, Lender requires that this loan be covered by mortgage insurance. Lender has arranged or will arrange this insurance for you. At the time of closing, you shall pay the initial premium of $ 0.00

6. ☐ **EXTERMINATION CERTIFICATION.** If checked, you must provide from a reputable exterminating company, certification confirming that there are no wood destroying insects existing on the Property. If any such infestation exists, Lender requires that it be properly treated and any damage repaired as determined by Lender. The treatment and repair must be satisfactory to Lender.

7. ☐ **WELL/SEPTIC CERTIFICATION.** If checked, you must provide a current certification from the local health authority or licensed sanitarian indicating the ☐ well and/or ☐ septic system meets Lender's and DEP/EPA standards.

8. ☐ **CERTIFICATE OF OCCUPANCY.** If checked, you must arrange for a certification to be provided to Lender that the Property complies with all state and local codes so that it may be occupied as you plan to use it (a Certificate of Occupancy or Licenses & Inspection Certification).

9. ☐ If checked, the following repairs must be made to the Property:

   ☐ If checked, construction of the Property must be completed in accordance with plans and specifications.

   You must notify Lender when the Property is ready for inspection to confirm that the construction or repairs have been completed. An appraiser chosen by Lender must certify in writing to Lender's satisfaction that the construction or repairs are complete. The appraiser must also recertify that the value of the Property reflected in the initial appraisal report is still valid. Lender will arrange for the appraiser to make this inspection and you will have to pay this cost at closing.

CONVP/HWVA
© New Jersey Mortgage Loan Commitment
2C031-NJ (03/91)

Page 3 of 5

Initials: CD
BO

BANA 904

CONFIDENTIAL

Redacted

# Redacted

LOAN #: ████2386

1.  **TITLE INSURANCE.** Title insurance in the amount of $ 229,500.00                                is required. You must provide Lender with a title binder from a Lender-approved title insurance company, acceptable in form and content to Lender's attorneys, indicating that it will issue a Lender's Title Insurance Policy showing that Lender will have a valid first lien on the property without exception once the mortgage is filed of record.

2.  ☐ **SURVEY.** If checked, you must provide a survey of the Property acceptable in form and content to Lender and the title insurance company issuing title insurance on the Property.

3.  **HAZARD INSURANCE POLICY.**

    a.  You must provide Lender with an original hazard insurance policy written by a carrier acceptable to Lender, and proof indicating that the premium for the first year has been paid, no later than three (3) business days prior to closing. A binder or memorandum is not acceptable. The policy must be in effect at the time of closing and have a mortgagee clause naming Lender.

    b.  ☐ If checked, the Property is a condominium. You must provide Lender with an acceptable certificate of insurance no later than three (3) business days prior to closing. The certificate must name Lender as the insured mortgagee.

4.  **FLOOD INSURANCE POLICY.** A flood hazard policy must be provided if the property is located in a flood hazard area.

    a.  ☒ If checked, flood insurance is not required. If the Property is designated as being in a flood hazard area at any time in the future, Lender or its successors and/or assigns may obtain a flood insurance policy for you. You will be advised by letter that flood insurance has been obtained and you will be responsible to pay for it.

    b.  ☐ If checked, flood insurance is required in the amount of the loan or the maximum amount available. A copy of the application for flood insurance must be provided to Lender no later than three (3) business days prior to closing along with proof indicating that the premium for the first year has been paid. The mortgagee clause must name the Lender.

    c.  ☐ If checked, the Property is a condominium. You must provide an acceptable certificate of insurance naming the Lender as the insured mortgagee on the master flood policy.

5.  ☐ **MORTGAGE INSURANCE.** If checked, Lender requires that this loan be covered by mortgage insurance. Lender has arranged or will arrange this insurance for you. At the time of closing, you shall pay the initial premium of $ 0.00

6.  ☐ **EXTERMINATION CERTIFICATION.** If checked, you must provide from a reputable exterminating company, certification confirming that there are no wood destroying insects existing on the Property. If any such infestation exists, Lender requires that it be properly treated and any damage repaired as determined by Lender. The treatment and repair must be satisfactory to Lender.

7.  ☐ **WELL/SEPTIC CERTIFICATION.** If checked, you must provide a current certification from the local health authority or licensed sanitarian indicating the ☐ well and/or ☐ septic  system  meets Lender's and DEP/EPA standards.

8.  ☐ **CERTIFICATE OF OCCUPANCY.** If checked, you must arrange for a certification to be provided to Lender that the Property complies with all state and local codes so that it may be occupied as you plan to use it (a Certificate of Occupancy or Licenses & Inspection Certification).

9.  ☐ If checked, the following repairs must be made to the Property:




    ☐ If checked, construction of the Property must be completed in accordance with plans and specifications.


    You must notify Lender when the Property is ready for inspection to confirm that the construction or repairs have been completed. An appraiser chosen by Lender must certify in writing to Lender's satisfaction that the construction or repairs are complete. The appraiser must also recertify that the value of the Property reflected in the initial appraisal report is still valid. Lender will arrange for the appraiser to make this inspection and you will have to pay this cost at closing.

Initial
BD

Redacted

CONFIDENTIAL

BANA 905

D'Argenzio0059-P

Redacted

LOAN #: ██████2386

10. ☐ CONSTRUCTION WARRANTY. If checked, you must cause the builder of the Property to provide a new construction warranty acceptable to FHA/VA in compliance with state law.

11. ☐ PAYMENT OF DEBTS. If checked, you must provide written proof that the following debts have been paid in full (copy of latest statement and cancelled check or statement reflecting current balance of $0.00). You may pay these debts in full at closing by bringing the latest statement (or payoff letter) with you along with the required money to pay the debts in full.

12. ☐ SALE OF PRESENT PROPERTY. You must bring to the closing the settlement statement on your presently owned property at

and it must reflect your sale of the property and your receipt of net proceeds of at least $

13. ☐ PRESENT MORTGAGE LOAN(S). You must pay off your present mortgage loan(s) with:

14. ☐ SECONDARY FINANCING. If checked, you must provide a satisfactory written statement that you have obtained no secondary financing on the Property.

15. ☐ RESCISSION. If checked, your loan is a refinance transaction subject to rescission. You have the right to cancel as further explained in a separate notice. You can cancel your loan transaction within (3) business days after closing. For this reason, loan proceeds will not be disbursed until the fourth (4th) business day after closing and until you have certified to Lender that you have not cancelled.

16. ☐ OTHER CONDITIONS. If checked, the conditions on the attached notice of underwriting approval must also be satisfied no later than three (3) business days prior to closing unless specifically stated otherwise.

D. FEES PAYABLE BY BORROWER(S)

1. In connection with the origination, processing and closing of your loan, you will be required to pay the commitment fee and those other fees disclosed on the Good Faith Estimate of Settlement Charges you received earlier. If you chose to be represented by an attorney, you may be required to pay a fee to your attorney. Ask your attorney for an estimate of this fee. In addition to interim interest, you will also be required to pay the following estimated fees:

At closing, you must also pay enough money to establish an escrow account for the payment of real estate and similar taxes and any required hazard, flood or mortgage insurance.

2. The fees disclosed in the Good Faith Estimate of Settlement Charges and any other fees disclosed above are subject to change before closing based on current market conditions and/or charges by a third party which differ from our estimate of these charges. The discount points charged by Lender are subject to change before closing if you have not locked in the interest rate.

3. YOUR INTERESTS AND THE INTERESTS OF THE LENDER ARE OR MAY BE DIFFERENT AND MAY CONFLICT. LENDER'S ATTORNEY REPRESENTS ONLY THE LENDER AND NOT YOU AND YOU ARE, THEREFORE, ADVISED TO EMPLOY AN ATTORNEY OF YOUR CHOICE LICENSED TO PRACTICE LAW IN NEW JERSEY TO REPRESENT YOUR INTERESTS.

By signing this commitment, you request that Lender's attorney review the loan documents prepared by Lender, review title, and perform the following additional services:

You agree to pay all of the fees and expenses charged by Lender's attorney for such services and for any other work or services requested by you or your attorney.

Any charge which you will be required to pay Lender's attorney for services provided to Lender in connection with your mortgage loan will be based on an ☐ hourly fee or ☐ fixed rate. The charge which you will be expected to pay to Lender's attorney for such services is estimated to be $

CONV/FHA/VA
• New Jersey Mortgage Loan Commitment
2C831-NJ (09/01)

Page 4 of 5

Initials: BD

CONFIDENTIAL

Redacted

D'Argenzio000060-P

BANA 906

Redacted

LOAN #: ██ 2386

E.  LENDER MAY CANCEL THIS COMMITMENT WITHOUT LIABILITY ON ITS PART AND, SUBJECT TO APPLICABLE PROVISIONS OF NEW JERSEY DEPARTMENT OF BANKING REGULATIONS N.J.A.C. 3:1-16.1 *ET SEQ.*, RETAIN ALL FEES:

1.  If there is any change in whom the borrower(s) is/are.

2.  If any statement which you have made to Lender in your application or otherwise is found to be significantly inaccurate causing the need for Lender to review or further investigate.

3.  If prior to closing, your financial condition or employment status significantly changes from that presented in your application and Lender determines that it adversely affects the loan decision.

4.  If you begin (or if someone else begins against you) a case in bankruptcy, receivership, reorganization, rehabilitation, insolvency or any other matter whether or not similar to them; or if a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative is appointed for you or any of your property.

5.  If there is any significant change in the Property or in Lender's information about the Property as stated on the appraisal obtained by lender.

6.  If you fail to comply with any of the conditions in this commitment.

7.  If you did not lock in your interest rate and there is an interest rate increase which adversely affects your ability to qualify for the loan amount set forth above or, in Lender's opinion, to afford monthly payments at the higher interest rate.

F.  IMPORTANT GENERAL TERMS.

1.  This commitment is not transferable to any other property or person.

2.  This commitment supersedes all previous agreements or commitment letters concerning the mortgage loan requested in your application.

3.  The terms and conditions of this commitment may not be altered by you in any way.

4.  The terms and conditions of this commitment will continue in effect after you sign the note and mortgage at closing and shall survive closing.

5.  No secondary financing has been obtained by you to acquire the Property without express written approval of Lender.

6.  YOU MUST NOTIFY LENDER IMMEDIATELY OF ANY CHANGE IN YOUR FINANCIAL CONDITION OR EMPLOYMENT.

G.  BY SIGNING BELOW, YOU ACCEPT AND AGREE TO DILIGENTLY EXERCISE EVERY REASONABLE EFFORT TO COMPLY WITH, ALL OF THE TERMS AND CONDITIONS OF THIS COMMITMENT.

IF YOU SIGN THIS COMMITMENT, AND YOU DO NOT COMPLETE CLOSING IN ACCORDANCE WITH THE PROVISIONS DESCRIBED HEREIN, SUBJECT TO NEW JERSEY DEPARTMENT OF BANKING REGULATIONS, N.J.A.C. 3:1-16.1 *ET SEQ.*, YOU MAY LOSE SOME OR ALL OF THE FEES OR CHARGES PAID TO LENDER. THIS COMMITMENT IS BINDING UPON LENDER ONLY IF DELIVERED TO LENDER SIGNED AND DATED BY ALL BORROWERS    WITHIN            (        )  DAYS AFTER THE DATE OF THIS COMMITMENT ALONG WITH THE COMMITMENT FEE.

D'Argenzio000061-P

Countrywide Home Loans, Inc., itself or as agent for Countrywide Bank, FSB.

By _____

ACCEPTED:

_Carl A. D'Argenzio_ _____
Borrower  CARL A. D'ARGENZIO          Date

_Barbara A. D'Argenzio_ _____
Borrower  BARBARA A. D'ARGENZIO       Date

_____
Borrower                          Date

_____
Borrower                          Date

CONV/FHA/VA
• New Jersey Mortgage Loan Commitment
2C831-NJ (08/01)

Page 6 of 6

Redacted

BANA 907

CONFIDENTIAL

Redacted

LOAN #: ██2386

10. ☐ CONSTRUCTION WARRANTY. If checked, you must cause the builder of the Property to provide a new construction warranty acceptable to FHA/VA in compliance with state law.

11. ☐ PAYMENT OF DEBTS. If checked, you must provide written proof that the following debts have been paid in full (copy of latest statement and cancelled check or statement reflecting current balance of $0.00). You may pay these debts in full at closing by bringing the latest statement (or payoff letter) with you along with the required money to pay the debts in full.

12. ☐ SALE OF PRESENT PROPERTY. You must bring to the closing the settlement statement on your presently owned property at

and it must reflect your sale of the property and your receipt of net proceeds of at least $

13. ☐ PRESENT MORTGAGE LOAN(S). You must pay off your present mortgage loan(s) with:

14. ☐ SECONDARY FINANCING. If checked, you must provide a satisfactory written statement that you have obtained no secondary financing on the Property.

15. ☐ RESCISSION. If checked, your loan is a refinance transaction subject to rescission. You have the right to cancel as further explained in a separate notice. You can cancel your loan transaction within (3) business days after closing. For this reason, loan proceeds will not be disbursed until the fourth (4th) business day after closing and until you have certified to Lender that you have not cancelled.

16. ☐ OTHER CONDITIONS. If checked, the conditions on the attached notice of underwriting approval must also be satisfied no later than three (3) business days prior to closing unless specifically stated otherwise.

**D. FEES PAYABLE BY BORROWER(S)**

1.  In connection with the origination, processing and closing of your loan, you will be required to pay the commitment fee and those other fees disclosed on the Good Faith Estimate of Settlement Charges you received earlier. If you chose to be represented by an attorney, you may be required to pay a fee to your attorney. Ask your attorney for an estimate of this fee. In addition to interim interest, you will also be required to pay the following estimated fees:

At closing, you must also pay enough money to establish an escrow account for the payment of real estate and similar taxes and any required hazard, flood or mortgage insurance.

2.  The fees disclosed in the Good Faith Estimate of Settlement Charges and any other fees disclosed above are subject to change before closing based on current market conditions and/or charges by a third party which differ from our estimate of these charges. The discount points charged by Lender are subject to change before closing if you have not locked in the interest rate.

3.  YOUR INTERESTS AND THE INTERESTS OF THE LENDER ARE OR MAY BE DIFFERENT AND MAY CONFLICT. LENDER'S ATTORNEY REPRESENTS ONLY THE LENDER AND NOT YOU AND YOU ARE, THEREFORE, ADVISED TO EMPLOY AN ATTORNEY OF YOUR CHOICE LICENSED TO PRACTICE LAW IN NEW JERSEY TO REPRESENT YOUR INTERESTS.

By signing this commitment, you request that Lender's attorney review the loan documents prepared by Lender, review title, and perform the following additional services:

You agree to pay all of the fees and expenses charged by Lender's attorney for such services and for any other work or services requested by you or your attorney.

Any charge which you will be required to pay Lender's attorney for services provided to Lender in connection with your mortgage loan will be based on an ☐ hourly fee or ☐ fixed rate. The charge which you will be expected to pay to Lender's attorney for such services is estimated to be $

CONV/FHA/VA
• New Jersey Mortgage Loan Commitment
2C8314-NJ (09/01)

Page 4 of 5

Initials: BD

CONFIDENTIAL

Redacted

D'Argenzio000062-P

BANA 908

Redacted

LOAN #: ████2386

E.  LENDER MAY CANCEL THIS COMMITMENT WITHOUT LIABILITY ON ITS PART AND, SUBJECT TO APPLICABLE PROVISIONS OF NEW JERSEY DEPARTMENT OF BANKING REGULATIONS N.J.A.C. 3:1-16.1 ET SEQ., RETAIN ALL FEES:

1.  If there is any change in whom the borrower(s) is/are.

2.  If any statement which you have made to Lender in your application or otherwise is found to be significantly inaccurate causing the need for Lender to review or further investigate.

3.  If prior to closing, your financial condition or employment status significantly changes from that presented in your application and Lender determines that it adversely affects the loan decision.

4.  If you begin (or if someone else begins against you) a case in bankruptcy, receivership, reorganization, rehabilitation, insolvency or any other matter whether or not similar to them; or if a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative is appointed for you or any of your property.

5.  If there is any significant change in the Property or in Lender's information about the Property as stated on the appraisal obtained by lender.

6.  If you fail to comply with any of the conditions in this commitment.

7.  If you did not lock in your interest rate and there is an interest rate increase which adversely affects your ability to qualify for the loan amount set forth above or, in Lender's opinion, to afford monthly payments at the higher interest rate.

F.  IMPORTANT GENERAL TERMS.

1.  This commitment is not transferable to any other property or person.

2.  This commitment supersedes all previous agreements or commitment letters concerning the mortgage loan requested in your application.

3.  The terms and conditions of this commitment may not be altered by you in any way.

4.  The terms and conditions of this commitment will continue in effect after you sign the note and mortgage at closing and shall survive closing.

5.  No secondary financing has been obtained by you to acquire the Property without express written approval of Lender.

6.  YOU MUST NOTIFY LENDER IMMEDIATELY OF ANY CHANGE IN YOUR FINANCIAL CONDITION OR EMPLOYMENT.

G.  BY SIGNING BELOW, YOU ACCEPT AND AGREE TO DILIGENTLY EXERCISE EVERY REASONABLE EFFORT TO COMPLY WITH, ALL OF THE TERMS AND CONDITIONS OF THIS COMMITMENT.

IF YOU SIGN THIS COMMITMENT, AND YOU DO NOT COMPLETE CLOSING IN ACCORDANCE WITH THE PROVISIONS DESCRIBED HEREIN, SUBJECT TO NEW JERSEY DEPARTMENT OF BANKING REGULATIONS, N.J.A.C. 3:1-16.1 ET SEQ., YOU MAY LOSE SOME OR ALL OF THE FEES OR CHARGES PAID TO LENDER. THIS COMMITMENT IS BINDING UPON LENDER ONLY IF DELIVERED TO LENDER SIGNED AND DATED BY ALL BORROWERS    WITHIN                    (    ) DAYS AFTER THE DATE OF THIS COMMITMENT ALONG WITH THE COMMITMENT FEE.

Countrywide Home Loans, Inc., itself or as agent for Countrywide Bank, FSB.

By _____

ACCEPTED:

_Carl D'Argenzio_  10/26/07        _Barbara D'Argenzio_  10-26-07
Borrower CARL A. D'ARGENZIO       Date        Borrower BARBARA A. D'ARGENZIO       Date

_____    _____        _____    _____
Borrower                           Date        Borrower                           Date

CONVFHAVA
• New Jersey Mortgage Loan Commitment                                Page 5 of 5
2C831-NJ (05/01)

D'Argenzio 0063 - P

CONFIDENTIAL

Redacted

BANA 909

Exhibit
21

Redacted

COUNTRYWIDE BANK, FSB

DATE:        09/08/2008
APPLICANT:   CARL D'ARGENZIO
             BARBARA D'ARGENZIO
MAILING ADDRESS: ███████████
             BLACKWOOD, NJ 08012-1465
Re: Application #:  ██████8366
   Loan Program: FIXED RATE FIRST-LIEN HOME LOAN
   Case #:  NJ3515181472703
   Property Address: ███████████
             BLACKWOOD, NJ 08012-1465

Office #: 0006191
2380 PERFORMANCE DRIVE
RICHARDSON, TX 75082
Phone: (866)391-7590
Office Fax No.: (888)223-9730

## WITHDRAWAL LETTER

Re: Application withdrawal confirmation

Dear:   CARL D'ARGENZIO
        BARBARA D'ARGENZIO

This letter confirms that you recently withdrew your application for a mortgage loan with
COUNTRYWIDE BANK, FSB
We hope that the next time you apply for a mortgage, you will consider us again.

If you did not intend for your application to be withdrawn, please contact us as soon as possible so we can move forward on
completing your loan request. If you have any questions, please contact us at the number above.

Again, thank you and we look forward to working with you in the future.

FHA/VA/CONV
● Notice of Action Taken  Withdrawal Letter
1E046-US (08/04)(d)



`* 23991 *`

Redacted

E 046

BANA1039

CONFIDENTIAL