ZEICHNER ELLMAN & KRAUSE LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-9100
WILLIAM T. MARSHALL, JR. (WM0626)
PHILIP S. ROSEN (PR0116)
KERRY A. DUFFY (KD6480)
Attorneys for Defendant Bank of America, N.A.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL D'ARGENZIO AND BARBARA D'ARGENZIO, <br><br>               Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, f/k/a COUNTRYWIDE BANK, FSB <br><br>               Defendant. | Civil Action No. 1:09-cv-05604 <br><br> Hon. Jerome B. Simandle <br><br> (Joel Schneider, U.S.M.J.) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY DEFENDANT BANK OF AMERICA, N.A.
FOR RECONSIDERATION PURSUANT TO
FED. R. CIV. P 60(a) and Local Civ. R. 7.1(i)**

On the brief:

William T. Marshall, Jr., Esq.
Kerry A. Duffy, Esq.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................ 1

LEGAL ARGUMENT.................................................................................... 3

POINT I    BANA'S MOTION FOR RECONSIDERATION SHOULD BE
GRANTED BECAUSE THERE ARE MATTERS AND
CONTROLLING AUTHORITY WHICH THE COURT
OVERLOOKED ........................................................................ 3

        1.    The Standard for Reconsideration ............................................3

        2.    The Court erred in its review of ECOA by not
considering certain moving and reply submissions of
BANA, including exhibits, filed in connection with the
motion for summary judgment. .................................................5

        3.    In its analysis of Plaintiffs' NJCFA claims, the Court
overlooked the reply submissions of BANA, including
exhibits, which directly impact the Court's ruling. .....................16

CONCLUSION................................................................................. 22

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)..........................................11, 12

Celotex Corp. v. Catrett,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d2 ........................................................11, 12

Database America, Inc. v. Bellsouth Advertising & Publishing Corp.,
825 F.Supp. 1216 (D.N.J. 1993)....................................................................................3

Electric Mobility Corp. v. Bourns Sensors/Controls,
87 F.Supp.2d 394 (D.N.J. 2000)....................................................................................3

G-69 v. Degnan,
748 F. Supp. 274 (D.N.J. 1990)......................................................................................4

Khare v. Campbell Soup Co.,
893 F. Supp. 316 (D.N.J. 1995)......................................................................................4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)................................................11

McGarry v. Resolution Trust Corp.,
909 F. Supp. 241 (D.N.J. 1995)......................................................................................4

New York Guardian Mortgage Corp. v. Cleland,
473 F. Supp. 409 (S.D.N.Y. 1979) ................................................................................4

Ordille v. U.S.,
2007 WL 173775 (C.A.3 (NJ) 2007)............................................................................15

Palmer v. Homecomings Financial LLC,
677 F. Supp.2d 233 (D.D.C. 2010)..............................................................................14

Panna v. Firstrust Sav. Bank,
760 F. Supp. 432 (D.N.J. 1991)......................................................................................4

Polizzi Meats, Inc. v. Aetna Life & Casualty Co.,
931 F.Supp. 328 (D.N.J. 1996)......................................................................................4

<u>Rouse v. Plantier</u>,
   997 F. Supp. 575 (D.N.J. 1998), vac. on other grounds, 182 F. 3d 192 (3d
   Cir. 1999).........................................................................................................4

<u>Source Search Technologies, LLC v. Lending Tree, LLC</u>,
   2006 WL 3289942 slip op. at *1 (D.N.J. Nov. 13, 2006).............................5

<u>Swietlowich v. Bucks County</u>,
   610 F. 2d 1157 (3d Cir. 1979) .....................................................................5

<u>United States v. Compaction Systems Corp.</u>,
   88 F.Supp.2d 339 (D.N.J. 1999)...............................................................3, 5

<u>Visconti v. Veneman</u>,
   2006 WL 3069214 (C.A.3 (N.J.) 2006)......................................................14

**FEDERAL STATUTES**

15 U.S.C. 1691(d)(6) ..........................................................................................10

15 U.S.C. 1691e(f)...............................................................................................13

15 U.S.C. § 1691(d)...............................................................................................6

15 U.S.C. § 1691e(f)............................................................................................14

**RULES**

Civ. R. 7.1(i) ..........................................................................................................1

<u>Civil Rule</u> 7.1(i) .....................................................................................................3

<u>Fed. R. Civ. P.</u> 60(a) ..............................................................................................3

Fed. R. Civ. P. 60(a) and L. ...................................................................................1

Rule 7.1(i) ..............................................................................................................4

Rule 56(c) .............................................................................................................11

**REGULATIONS**

7 C.F.R. § 15f.2 ...................................................................................................14

12 C.F.R. 202.9 (e) ................................................................................................9

12 C.F.R. 202.9 (c)(2)............................................................................................8

**OTHER AUTHORITIES**

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1471 (2d ed.1990)...........................................................................15

## PRELIMINARY STATEMENT

Defendant Bank of America, N.A. ("BANA") respectfully submits this memorandum in support of its motion for an order, pursuant to Fed. R. Civ. P. 60(a) and L. Civ. R. 7.1(i), granting reconsideration of the Court's order and decision of November 21, 2011 (the "Decision"), which denied summary judgment to BANA and, upon reconsideration, granting BANA the relief sought in its motion for summary judgment. (See Document #56)[1].

BANA submits that a review of the Decision confirms that the Court overlooked dispositive factual matters, controlling legal authority, and documentary evidence submitted by BANA in its moving and reply submissions which, had they been reviewed, might reasonably have resulted in a different conclusion by the Court on BANA's motion.

In particular, the Court apparently overlooked crucial documentation, attached to both the moving Declaration of William T. Marshall, Jr. ("Marshall Decl.") and the Reply Declaration of William T. Marshall, Jr. ("Marshall Reply Decl."), which would justify granting summary judgment dismissing Counts I and II of Plaintiffs' First Amended Complaint[2] – the Equal Credit Opportunity Act ("ECOA") claim and the New Jersey Consumer Fraud Act ("NJCFA"). By overlooking or misinterpreting prevailing

---

[1]  The identification of the "Document #" is a reference to the location of the document on the Civil Docket Report for this matter.

[2]  Plaintiffs filed their First Amended Complaint following their depositions and after BANA filed its motion for summary judgment.

law, and denying summary judgment as to Count I (ECOA), this Court breathed life into a sham claim which is both time-barred and inapplicable because there never was a "completed application" and plaintiffs failed to provide any credible evidence they had completed the application. Therefore, there was no "adverse action" under ECOA because the application was withdrawn on the basis of incompleteness. It appears the Court overlooked this as well as the Notice of Incompleteness and the Withdrawal Letter, which were part of BANA's motion papers.

In denying the motion for summary judgment on Count II the Court also overlooked the 2007 Mortgage Loan Commitment ("Loan Commitment") executed by Plaintiffs which had been filed in connection with BANA's motion. The Decision suggests that the Court did not consider this Loan Commitment, or its terms, and give it recognition when it issued its ruling on Plaintiffs' Consumer Fraud Act ("CFA") claim. Moreover, BANA believes the Court relied upon mere allegations and sham testimony by Plaintiffs, overlooking the fact that discovery had been completed, and that Plaintiffs failed to conform to the rules of discovery and produce to Defendant, let alone append to their opposition papers, a single piece of documentary evidence to support their allegations and unsubstantiated testimony.

**LEGAL ARGUMENT**

**POINT I**

**BANA'S MOTION FOR RECONSIDERATION
SHOULD BE GRANTED BECAUSE THERE
ARE MATTERS AND CONTROLLING AUTHORITY
WHICH THE COURT OVERLOOKED**

1.      **The Standard for Reconsideration**

The evidentiary record and applicable decisional authority supports the granting of BANA's motion for reconsideration. Motions for reconsideration are governed by Fed. R. Civ. P. 60(a) and Local Civil Rule 7.1(i).

There are three grounds upon which a motion for reconsideration may potentially be granted. First, the Court may grant reconsideration upon a showing that "the court overlooked 'dispositive factual matters or controlling decisions of law' that 'might reasonably have resulted in a different conclusion by the court.'" United States v. Compaction Systems Corp., 88 F.Supp.2d 339, 345-46 (D.N.J. 1999).  Second, a Court may grant reconsideration upon a showing that there is "an intervening change in controlling law [which] has occurred." Electric Mobility Corp. v. Bourns Sensors/Controls, 87 F.Supp.2d 394, 401 (D.N.J. 2000). Third, a Court may grant reconsideration if there is a demonstration that "evidence not previously available has become available." Database America, Inc. v. Bellsouth Advertising & Publishing Corp., 825 F.Supp. 1216, 1220 (D.N.J. 1993).

For purposes of this motion, BANA focuses on the first identified ground, as BANA believes there are dispositive matters which the Court somehow overlooked before rendering its ultimate decision on the motion, and which confirm that Plaintiffs lack viable ECOA and NJCFA claims.  The term "overlooked matters" refers, among other things, to facts "presented to the court in the movant's papers, and not to matters presented for the first time in the motion for reconsideration." Polizzi Meats, Inc. v. Aetna Life & Casualty Co., 931 F.Supp. 328, 339 (D.N.J. 1996).  Rule 7.1(i) is subject to relaxation by the court. "There is nothing to prevent the court from examining new facts or evidence that might lead to a different result if considered by the court." Panna v. Firstrust Sav. Bank, 760 F. Supp. 432, 435 (D.N.J. 1991).  The "proper ground for granting a motion to reconsider, therefore, is that the matters or decisions overlooked, if considered by the Court, 'might reasonably have altered the result reached.'" G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990), quoting New York Guardian Mortgage Corp. v. Cleland, 473 F. Supp. 409, 420 (S.D.N.Y. 1979).

Reconsideration has been granted where the Court overlooked an argument in a footnote of a brief, Rouse v. Plantier, 997 F. Supp. 575, 579 (D.N.J. 1998), vac. on other grounds, 182 F. 3d 192 (3d Cir. 1999); where the Court overlooked a potentially dispositive argument, McGarry v. Resolution Trust Corp., 909 F. Supp. 241 (D.N.J. 1995); and where the Court did not consider one of two grounds submitted in the initial papers, Khare v. Campbell Soup Co., 893 F. Supp. 316 (D.N.J. 1995).

The Court also may grant a motion for reconsideration where its prior decision has overlooked a legal issue that may alter the disposition of the matter. See U.S. v. Compaction Systems Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 2000); Source Search Technologies, LLC v. Lending Tree, LLC, 2006 WL 3289942 slip op. at *1 (D.N.J. Nov. 13, 2006) (granting plaintiff's motion for reconsideration because the court overlooked plaintiff's asserted definition of a term in a patent infringement case). "A trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling . . . might lead to an unjust result." Swietlowich v. Bucks County, 610 F. 2d 1157, 1164 (3d Cir. 1979).

     **2.**     **The Court erred in its review of ECOA by not considering certain moving and reply submissions of BANA, including exhibits, filed in connection with the motion for summary judgment.**

It appears clear from the language of the Decision that the Court did not take, review or consider the Withdrawal Letter which was attached as Exhibit 21 to the Reply Declaration of William T. Marshall, Jr. **(Document #49)**.   The Court's unfortunate and crucial omission is confirmed by the Court's comments on page 8 of the decision in footnote 3 **(See Document #56)** which states:

> The parties in their briefs discuss a letter sent to the Plaintiffs in September, 2008, by the Defendant in which the Defendant states the Plaintiffs withdrew their application. **This letter is not attached as an exhibit by either of the parties and Plaintiffs vehemently dispute ever receiving the letter. However, since this letter is not attached as part of the record before the court, it will not be considered in analyzing the instant summary judgment motion.** [emphasis supplied]

Because the Court overlooked this key documentary evidence, the Court's interpretation of ECOA and conclusions reached regarding the sustainability of Plaintiffs' ECOA claim were in error.[3]

The Decision issued by the Court clearly reflects that the Court engaged in an independent analysis of the provisions of ECOA. Specifically, the Court discusses and identifies certain legal authority not presented to the Court either by Plaintiffs or BANA. **(See Document #56 - Decision pp. 14-17).** In the Decision, the Court found that Plaintiffs' "base their ECOA claim on the Defendant's failure to provide notice of the cancellation of their 2008 loan application and the reason for the adverse action as required by 15 U.S.C. § 1691(d). **(See Document #56 - Decision p. 14).** The Court ultimately concluded that a jury could:

> find that the Plaintiffs' did not withdraw their application based upon the Plaintiffs' testimony. If a jury finds that Defendant denied the Plaintiffs' July 2008 application, then under ECOA, the **Plaintiffs** were entitled to receive notice within 30 days of this adverse action and a statement of reasons for the denial. Since these items were not received by the Plaintiffs, a jury could conclude that the Defendant violated the ECOA."
>
> **(See Document #56 - Decision p. 17).**

The above conclusions of the Court, however, are flawed for three reasons. <u>First</u>, the Court erred by overlooking and failing to consider the exhibits attached to the Marshall Decl. and Marshall Reply Decl. which confirm that BANA complied with ECOA, and its related regulations, and issued the requisite notices to

---

[3]   BANA does not dispute the Court's conclusion in the Decision that Plaintiffs were not required to be part of a protected class.

Plaintiffs, i.e. the July 2, 2008 Notice of Incompleteness and Request for Additional Information (the "Notice of Incompleteness")  **(See Document # 36 - Marshall Decl. ¶17, Exh. 14)** and the September 8, 2008 Withdrawal Letter (the "Withdrawal Letter") **(See Document # 49 - Marshall <u>Reply</u> Decl. Exh. 21).**  <u>Second</u>, there was no "adverse action" taken by Defendant because the application was withdrawn.   <u>Third</u>, the Court improperly relies upon Plaintiffs' mere allegations in their First Amended Complaint, without anything more - not a single piece of documentary evidence to support their allegations regarding their 2008 application or the documents they allege were sent to Defendant by FedEx, e-mail or fax.

          **a.**        **The Documentary Evidence produced by BANA, and overlooked by the Court, confirms that Plaintiffs' ECOA claim is not sustainable.**

The Court's conclusion that there were "genuine issues of material fact regarding the processing and cancellation of the July 2008 loan application" is based upon the faulty presumption that BANA did not issue the requisite notices under ECOA to Plaintiffs.  BANA, in fact, did issue the requisite notices and even produce copies of these notices to both its moving and reply submissions. The Notice of Incompleteness directed to the attention of Plaintiff Carl D'Argenzio was filed with BANA's initial moving papers. **(See Document # 36 - Marshall Decl. ¶17, Exh. 14).**  The Withdrawal Letter directed to Plaintiffs attention was filed with BANA's reply papers. **(See Document # 49 - Marshall <u>Reply</u> Decl. Exh. 21).**

**Notice of Incompleteness**

BANA issued the Notice of Incompleteness to Plaintiff in accordance with ECOA and its related regulations. Specifically, 12 C.F.R. 202.9 (c)(2) provides that:

> Notice of incompleteness. If additional information is needed from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application. The creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period. If the applicant supplies the requested information within the designated time period, the creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this section.

The Notice of Incompleteness, supplied by Plaintiff in discovery, specifically identified the documents and/or information which Plaintiffs were required to provide to Defendant, including without limitation, two months of bank statements, most recent pay stub, income tax returns for 2006 and 2007, W-2 forms for 2006 and 2007, proof of homeowners insurance, and signed disclosures. (**See Document # 36 - Marshall Decl. ¶17, Exh. 14**).  Plaintiff Barbara D'Argenzio even testified that she recalled seeing the Notice of Incompleteness. (**See Document # 36 - Marshall Decl. ¶17(t), Exhs. 10, 14**).  The Court, however, overlooked the fact that Plaintiffs failed to produce a single piece of documentary evidence, in connection with its opposition let alone discovery, to substantiate their mere <u>allegation</u> that Plaintiffs "mailed, scanned,

FedExed, e-mailed [and/or] faxed" the information requested by Defendant in the Notice of Incompleteness. **(See Document #47 – Opposition Brief pp. 3, 9).** Not a single FedEx receipt, a single e-mail, or even a fax confirmation receipt to substantiate their allegations regarding the response to the Notice, nor did Plaintiffs even produce a copy of a signed loan application.

**Withdrawal Letter**

The Court also overlooked the fact that BANA issued the Withdrawal Letter to Plaintiffs consistent with ECOA and its related regulations. **(See Document # 49 - Marshall Reply Decl. Exh. 21).** Specifically, 12 C.F.R. 202.9 (e) states that:

> Withdrawal of approved application. When an applicant submits an application and the parties contemplate that the applicant will inquire about its status, if the creditor approves the **application** and the applicant has not inquired within 30 days after applying, the creditor may treat the application as withdrawn and need not comply with paragraph (a)(1) of this section.

The Withdrawal Letter by its express language confirms the withdrawal of Plaintiffs' application. **(See Document # 49 - Marshall Reply Decl. Exh. 21).** The testimony of Dinorah Vasquez further substantiates this documentation, i.e. that Plaintiffs application was withdrawn / cancelled. **(See Document # 36 - Marshall Decl. ¶91(g) and Exh. 14).** This evidence is crucial as it confirms BANA's compliance with ECOA. The statements of the Court at page 8 of the Decision confirm that the Court failed to review the Withdrawal Letter, or appreciate the effect thereof.

**b.    There was no "adverse action" under ECOA.**

The Court highlights at pages 14 through 17 of the Decision, the definition of an "adverse action" under ECOA and relevant case law regarding same. The Court quotes, in part, directly from 15 U.S.C. 1691(d)(6), noting that "the term 'adverse action' means a denial or revocation of credit, a change in the terms of the existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested[.]" **(See Document #56 - Decision pp. 14, 15).** This is not what occurred in the present case, and the bank records attached to Defendant's moving and reply papers confirm as such.

Here, the Court overlooked the fact that Defendant issued a Notice of Incompleteness in accordance with ECOA and the governing regulations. Plaintiff did not produce or file in opposition a single document to support their allegations that they responded to the Notice of Incompleteness. Because Plaintiffs failed to provide the necessary information and documents requested in the Notice of Incompleteness, their application was not "complete" resulting in the issuance of the Withdrawal Letter. **(See Document # 49 - Marshall <u>Reply</u> Decl. Exh. 21).** There was no "adverse action" under ECOA which occurred, rather the documentary and testimony evidence which Defendant's submitted in connection with its moving and reply papers wholly confirm the withdrawal / cancellation of the loan application.

10

  c.  **Plaintiffs' mere allegations relating to the ECOA claim, without more, are insufficient to defeat summary judgment.**

  The Court, in rendering its decision, unfortunately neglected to consider documentary evidence produced and filed by BANA, and improperly relies upon Plaintiffs' mere allegations in their First Amended Complaint, which were crafted to mirror Plaintiffs deposition testimony, without anything more. By doing so, the Court failed to apply to the well-settled standard for summary judgment.

  As noted in BANA's moving brief, the non-moving party may <u>not</u> rest upon the mere allegations or denials of its pleadings. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d *65* (1986). The non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id</u>. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. at 322.

  Thus, once the moving-party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts ...." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable ... or is not significantly probative ... summary judgment may be granted." <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

A nonmoving party must adduce more than a mere scintilla of evidence in its favor. See Anderson, supra. at 249, 106 S.Ct. at 2510. The non-moving party cannot simply reassert factually unsupported allegations contained in its pleadings, see Celotex, supra, at 325, 106 S.Ct. at 2553.

With discovery having concluded, Plaintiffs completely failed to produce to Defendant, or to the Court for that matter, a single piece of documentary evidence to support their mere allegations and self-serving testimony with respect to the 2008 application, and their alleged submissions to Defendant. The Court wholly overlooked this fact.

In opposition, Plaintiffs relied upon the testimony of Carl D'Argenzio that he allegedly "mailed, scanned, Fedexed, e-mailed, faxed and scanned numerous times the documents requested by defendant in support of the July 2008 refinancing. (Document 47 – Opposition Brief p.3 #8). The Court, however, overlooked that no proofs of any mailing were submitted to the Court by Plaintiff. Not a single print out of the items which Plaintiffs allegedly scanned were identified or attached in opposition or through discovery. Plaintiffs have not produced a single FedEx mailing receipt to corroborate Plaintiffs' testimony. Nor have Plaintiffs provide any copies of alleged e-mails to substantiate their allegations. Lastly, Plaintiffs have not even provided a single facsimile confirmation in discovery in this litigation to substantiate Plaintiffs'

allegations with regard to the 2008 application. This is information which should be readily available to Plaintiffs, however not a single items has been produced to substantiate Plaintiffs' claims herein.

Plaintiffs do not even represent to the Court that they have any documents to support their allegations about what they sent to the Defendant in 2008, nor do they even represent that they have a signed copy of the 2008 loan application. Defendant, on the other hand, has supported the testimony regarding the 2008 loan application with documentation directly related to Plaintiffs' deficiencies and the course of action which Plaintiff took in compliance with ECOA.

### d.      The ECOA claim is time barred.

The Decision brought to light a key factor for which this Court should also take notice. Plaintiffs' ECOA claim against Defendant is time-barred as a matter of law.  Specifically 15 U.S.C. 1691e(f) of ECOA titled, jurisdiction of the court; time for maintenance of the action; exceptions, states:

> Any action under this section may be brought in the appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction. **No such action shall be brought later than two years from the date of the occurrence of the violation,** except that – (1) whenever any agency having responsibility for administrative enforcement under section 1691c of this title commences an enforcement proceeding within two years from the date of the occurrence of the violation, (2) whenever the Attorney General commences a civil action under this section within two years from the date of the occurrence of the violation, then any applicant who has been a victim of the discrimination which is the subject of such proceeding or civil

13

> action may bring an action under this section not later than one
> year after the commencement of that proceeding or action.

(emphasis added).

Courts in applying this section have noted that a borrower's cause of action under ECOA accrues, and the two year statute of limitations period begins to run, when the borrower signed documents for his/her refinanced mortgage loan. See Palmer v. Homecomings Financial LLC, 677 F. Supp.2d 233 (D.D.C. 2010). See also, Visconti v. Veneman, 2006 WL 3069214 (C.A.3 (N.J.) 2006), citing 15 U.S.C. § 1691e(f). Congress retroactively extended the limitations period for certain "eligible complaints." Visconti v. Veneman, supra. In Visconti, the Court stated the "term 'eligible complaint' refers to a nonemployment related discrimination complaint filed with the USDA prior to July 1, 1997, which alleged discrimination by the USDA at any time between January 1, 1981, and July 1, 1997. Id., see also § 741(e); 7 C.F.R. § 15f.2. "Eligible complaints" may be brought in a civil action or in an administrative proceeding. See § 741(a) & (b).

Plaintiffs' First Amended Complaint, however, does not fall within that category. Here, Plaintiffs allege that in or around July 2008 they signed documentation for the application to refinance. Plaintiffs were required to raise their ECOA claims by or before July 2010, but they did not do so. Plaintiffs First Amended Complaint was not filed until May 2011, well after the limitations period expired. Thus, Plaintiffs' ECOA claim is time-barred as a matter of law.

Moreover, Plaintiffs are not entitled to the benefit of the relation back doctrine. Under the common law, relation back of amendments is <u>not</u> permitted when the amendment alters the cause of action. See <u>Ordille v. U.S.</u>, 2007 WL 173775 (C.A.3 (NJ) 2007), See also, 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1471 (2d ed.1990). The First Amended Complaint filed in May 2011 wholly altered Plaintiffs' underlying cause of action as Plaintiffs original complaint did not mention or even assert a claim for violation of ECOA, and thus should not relate back. [Compare Original Complaint with Amended Complaint]

Accordingly, for the reasons set forth herein, Plaintiffs' ECOA claim should have been dismissed because the Court overlooked in the Decision the documentary evidence which confirms that BANA complied with ECOA, and its related regulations, and issued the requisite notices to Plaintiffs, i.e. the Notice of Incompleteness **(See Document # 36 - Marshall Decl. ¶17, Exh. 14)** and the Withdrawal Letter. **(See Document # 49 - Marshall <u>Reply</u> Decl. Exh. 21).** There clearly was no "adverse action" taken by Defendant because the application was withdrawn as supported by both the documents filed by Defendant and the testimony provided. The ECOA claim is time-barred and Plaintiffs are not entitled to the application of the relation back doctrine. Plaintiffs' mere allegations in their First Amended Complaint, without anything more, are insufficient to defeat summary judgment on the ECOA claim.

3.    **In its analysis of Plaintiffs' NJCFA claims, the Court overlooked the reply submissions of BANA, including exhibits, which directly impact the Court's ruling.**

The Decision, by its terms, also confirms that the Court did not review the Loan Commitment which was attached as Exhibit 20 to the Reply Declaration of William T. Marshall, Jr. **(Document #49)**.  This clear oversight is confirmed by the Court's comments on page 13 of the decision **(See Document #56)** which provides, in pertinent part, that :

> The Defendant also argues that consideration of these oral statements goes beyond the four corners of the 2007 loan agreement and are therefore inadmissible under the parol evidence rule. This argument fails for two reasons. **First, the Defendant has not attached the 2007 loan document as an exhibit to its motion and therefore is outside of the record currently before the Court and therefore its express language cannot be considered on this motion**. Second, Plaintiff is not offering these statements to change the meaning of the 2007 loan document.

(Emphasis added). **(Document #56 – p. 13)**.

The Court, however, should have reviewed the language of the Loan Commitment executed by Plaintiffs and dated October 23, 2007 **(Document #49)** because it would have shed light on the fact that the claims made by Plaintiffs under the NJCFA are not sustainable and are couched upon mere allegations without anything more. Plaintiffs are attempting to recover damages on their CFA claims on the 2007 loan claiming tortious conduct, yet their underlying claims are based upon an alleged breach an oral contract, something which is not supportable by the facts, as

16

demonstrated by the 2007 loan document attached to the Marshall Reply Decl. as Exhibit 20, or the governing law.

Without having reviewed the Loan Commitment which was filed, the Court erred as it was unable to fully examine the propriety of the CFA claim in its Decision when faced with the facts set forth and documents attached to the Marshall Reply Declaration. Plaintiffs admit signing the URLA, admit receiving a loan commitment which made no reference to a future loan, and admit that they executed various applications, an agreement, and disclosures for the loan (which, inter alia, confirmed their financial status and spelled out the terms and conditions of their loan), none of which contained any language identifying a representation or even so much as a promise of a possible future loan, as Plaintiffs allege. (See Marshall Decl. ¶¶17 (f-p) – 18 (a-k), Exhs. 10-15).

Here, the Loan Commitment states, in pertinent part, at Section B(2) that "no change in this commitment is valid unless approved by the lender in writing." **(Document #49).** There is no language containing any promise to Plaintiffs of a future loan anywhere in the Loan Commitment executed prior to the closing. **(Document #49 – Exhibit 20).** The language of the Loan Commitment was clear and unambiguous. Despite this fact, Plaintiffs through their CFA claim are attempting to alter the terms of the loan commitment claiming they were promised something else relying on their testimony and not providing specifics to the arrangement. The Court by not reviewing the loan commitment attached to the Marshall Reply Decl. as Exhibit 20 missed a prime

17

opportunity to address this in the lack of viability of Plaintiffs' CFA claims in light of the documents provided by Defendant.

Here, Plaintiffs did not dispute that they signed this agreement for a Loan Commitment in connection with the 2007 loan. Nor do Plaintiffs dispute that the 2007 Mortgage Loan was made for the purpose of paying off a 2005 Mortgage Loan, and in the process, pay off other debts. (See Marshall Decl. ¶¶17-18, Exhs. 10, 15). Rather, in opposition, Plaintiffs misstate the documentary evidence adduced in this case and attempt to refute the unambiguous language of the Loan Commitment by relying upon their own self-serving deposition testimony. **(Document #47 – p. 4).**

Plaintiffs' opposition only identifies two alleged instances of unlawful conduct, neither of which are supported by the evidentiary record. First, Plaintiffs claim that a formal representation was made in connection with their 2007 Mortgage Loan that Plaintiffs would somehow be guaranteed an automatic refinancing of said Loan at a more favorable rate. However, there is no evidence of such a guaranteed refinancing. In point of fact, the undisputed testimony and documents produced through discovery confirm otherwise, and CDA even acknowledged as such. For example, CDA testified that Dave "had asked me if I would be able to afford $3000 a month." (See Marshall Decl., Exh. 15 (CDA Tr. 33:7-8)). CDA also acknowledged that only if he did not encounter any problems and if he could afford the $3000 a month payment he might be able to be put into a new loan. (See Marshall Decl., Exh. 15 (CDA Tr. 33:16-23)). CDA also testified "-- at that particular time I had a nice little cushion put away. I was

making good money, you know, and it was my busy season. So you know, no, I didn't

have a problem." (See Marshall Decl., Exh. 15 (CDA Tr. 34:2-5)).  Moreover, the

testimony regarding CDA's entry into the loan is as follows:

>Q:     You went forward with the loan?
>
>A:     Yeah. I went forward with the loan, and they sent someone to my house from – it's really driving me crazy, the name of this town in Philly. I don't know. Somewhere in Pennsylvania
>
>Q:     And at the time you signed the final copies of the loan documents that we referred to here that were marked?
>
>A:     Correct, yes.
>
>Q:     That was November the 6th of 2007?
>
>A:     Possibly, yes.
>
>Q:     Okay.  Now when you – when you signed those documents, you read them or had an opportunity to read them, correct?
>
>A:     Briefly, skimmed through them.

(See Marshall Decl., Exh. 15 (CDA Tr. 34:24-25; 35:1-13)).

The Court overlooked that BDA admitted at deposition that CDA

encountered difficulty in making payments soon after the loan closed in 2007 (BDA Tr.

64).  BOA's records, authenticated by its designated witness, Dinorah Vasquez, at her

deposition on March 28, 2011 reflect, *inter alia*, a February 2008 communication from

BDA informing BOA that after two payments on the November 2007 loan, she was

attempting to refinance the November 2007 loan and she would call BOA back "if" she

doesn't qualify. (See Marshall Decl., Exhs. 13, 16). That document is a contemporaneous, routine business record of calls between BOA representatives and its customers. BDA's admission demonstrates that there was no expectation of any certainty that there would be a more favorable loan. The relevant details of the call are contained on the relevant portion of the account notes marked and identified at the Vasquez deposition (See Marshall Decl., Exh. 13). It states as follows, based on the telephonic conversation with Barbara D'Argenzio (BDA) on February 13, 2008:

> h/o std she is having difficulty making Feb payment because interest rate is too high…adv about rate red…h/o is doing a refi at the moment…adv if she doesn't qual. she would call back.

(See Marshall Decl., Exh. 13).

As stated above, this shows that there was no expectation of any automatic or guaranteed refinance loan on the part of Plaintiffs, as alleged. So, in addition to the absence of any writing in the transactional documents for the November 2007 loan, there was not even an expectation of an automatic refinance at a lower rate, also admitted by the mere fact that Plaintiffs were participating in the application process in 2008, which they do not dispute. Moreover, *arguendo,* there was such a agreement that Plaintiffs would automatically qualify for a lower rate loan after a period of 3, 4 or even 6 months, it is clear that by February 2008, Plaintiffs were heading for default on the November 2007 refinancing, as acknowledged, through Plaintiffs' testimony and BOA's business records.

Second, Plaintiffs claim in their Opposition brief that the other instance of alleged unlawful conduct was an alleged oral loan commitment in July 2008 relayed by a phone message. This contention is similarly baseless because there is no such allegation regarding an oral loan commitment in July 2008 made in Plaintiffs' Amended Complaint, primarily because there was no such alleged "oral commitment."

Notably, Plaintiffs' Opposition brief and Counter-Statement of facts omit reference to the complete content of the undated phone message played into the record at CDA's deposition. (See Reply Decl., Exh. 22 at P. 52). Specifically, and most tellingly, Plaintiffs fail to reference that "Ben" stated in his phone message to CDA and BDA that he was "Just checking in. I haven't heard you guys – from you in a while." (See Reply Decl., Exh.22 (CDA Tr. 52:10-12)). Moreover, Plaintiffs omit reference to the fact that the message from "Ben" advised them that the "approval" would be cancelled in a couple of days if he did not hear back from Plaintiffs. (See Reply Decl., Exh.22 (CDA Tr. 52:17-20)). BDA testified that she does not recall having conversations with anyone regarding the 2008 unsigned URLA. (See Marshall Decl., Exh.10 (BDA Tr. 69)). BDA also conceded seeing a notice of incompleteness by the Bank relating to the 2008 loan application. (See Marshall Decl., Exh.10). BOA's records even confirm that the 2008 URLA had been withdrawn and that there was

21

nothing in its records to show that it had ever been signed.[4] (See Marshall Decl. ¶17, Exhs. 13, 16).

Ultimately based upon the documentary evidence filed in connection with the summary judgment motion, Plaintiffs failed to establish a viable basis to maintain a CFA claim which they crafted under the alleged failure to honor an oral contract.

## CONCLUSION

By reason of the foregoing, and for those reasons set forth in the moving papers, the Motion for Reconsideration of the Order and Decision of November 21, 2011, denying Summary Judgment should be granted.

DATED:       Roseland, New Jersey
             December 5, 2011

                         ZEICHNER ELLMAN & KRAUSE LLP
                         Attorneys for Defendant Bank of America, N.A.


                         BY: _____
                             WILLIAM T. MARSHALL, JR. (WM0626)
                             KERRY A. DUFFY (KD6480)

---

[4] During CDA's deposition he was challenged on the fact that there was no signed application. He testified that it had been signed and that he had a copy of it but had not produced it. At the request of counsel for BOA, he agreed to produce a copy of the signed application – which had been called for in the request to produce documents but not produced. CDA testified that he did not recall previously seeing or signing Plaintiff's Answers to Interrogatories, and did not recall seeing the Notice to Produce at all. (See Marshall Decl., Exh. 15 (CDA Tr. 73 (Exh. 8); 108-109 (Exh. 4)). No such signed application was able to be produced.