## ZEICHNER ELLMAN & KRAUSE LLP

103 EISENHOWER PARKWAY
ROSELAND, NEW JERSEY 07068
(973) 618-9100
FAX: (973) 364-9960
www.zeklaw.com

575 LEXINGTON AVENUE
NEW YORK, NY 10022
(212) 223-0400
FAX: (212) 753-0396

-------

35 MASON STREET
GREENWICH, CT 06830
(203) 622-0900
FAX: (203) 862-9889

WILLIAM T. MARSHALL, JR.
wmarshall@zeklaw.com

March 2, 2012

**ECF**

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets Room 2060
Camden, New Jersey 08101

> Re:   Carl D'Argenzio and Barbara D'Argenzio v. Bank of
>       America Corporation, f/k/a Countrywide Bank, FSB
>       Civil Action No. 09-5604 (JBS, JS)
>       Our File No. 82978.053

Dear Judge Schneider:

This letter brief is submitted on behalf of Bank of America, N.A., f/k/a Countrywide Bank, FSB ("BANA") pursuant to the Amended Scheduling Order dated February 23, 2012 requiring, in pertinent part, that Defendant BANA file its response to Plaintiffs' "late notice" objections to certain of Defendant's proposed fact and expert witnesses listed in a draft final pretrial order.

In total, Defendant listed a total of thirteen (13) witnesses or categories of witnesses and one designated proposed expert witness, Laura J. Borelli.  Plaintiffs raised objection to seven witnesses or categories of witnesses (e.g., Plaintiffs' accountants) and the proposed expert witness.  Based on

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 2

discussions among counsel at the pretrial conference, as many as five of the objections to lay witnesses may not be necessary.  That is, the parties shall attempt to work their differences out and obviate the need for such witnesses.

The two witnesses which Defendant seems certain to call are Brian Broderick, a former employee of MidAtlantic Capital LLC, or a substitute in the case of his unavailability and a Countrywide employee or former employee who was involved in Plaintiffs' 2005 loan from Countrywide to the Plaintiffs.

**Brian Broderick**.  Broderick's name appeared prominently in documents relating to Plaintiffs' attempted refinancing efforts with MidAtlantic in or about July through September 2007, just prior to the Plaintiffs' November 2007 refinancing with Defendant Bank of America N.A., formerly Countrywide Bank, FSB.  (The two alternate witnesses are mentioned, a Ben Stucker and Camille Marotta, in the event that Brian Broderick is unable to testify.) Broderick's name appears on page 15 of the draft final pretrial order submitted to the Court on February 23, 2012 and is No. 1 on Plaintiffs' objections on page 16 of the same document. Mr. Broderick is currently employed by eMortgage Management LLC, 222 Haddon Avenue, Suite 2A, Haddon Township, New Jersey 08108-2827, telephone number (856) 793-1400.

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 3

Mr. Broderick has some recollection of dealing with Plaintiff Carl D'Argenzion and has some recollection of financial problems which developed in connection with the proposed D'Argenzio refinancing, which was instrumental in the inability of the loan to be consummated. Mr. Broderick's testimony should shed light on the knowledge and credibility of Plaintiff Carl D'Argenzio. Defendant learned of Mr. Broderick through discovery produced by Plaintiffs. Thus, it should not come as any surprise to Plaintiffs that Mr. Broderick would be called as a witness. Mr. Broderick's testimony also would help rebut Plaintiffs' contention that Defendant sought out and induced Plaintiffs into a transaction based on misrepresentations of fact. Mr. Broderick's testimony would relate to the document which is listed as number 13 on page 19 of the draft final pretrial order submitted to the court on February 23, 2012, namely, the 2007 loan application file of MidAtlantic Capital to refinance 2005 loan to which Plaintiff has not objected. Mr. Broderick also could authenticate the MidAtlantic documents on behalf of Defendant. Plaintiffs' counsel indicated he is not interested in deposing Mr. Broderick.

**Countrywide's 2005 loan witness**. Defendant listed four (4) potential witnesses employed by it in 2005: Laurie Meder, Michelle Sjolander,

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 4

Maribel Ledezma, and Scott Newman, also appearing on pp. 15 and 16 (Objection #3) of the draft final pretrial order. The designated witness would testify on behalf of Bank of America in connection with the 2005 loan for such areas as the application process, underwriting, closing and payoff amounts not only to authenticate documents but also to explain the 2005 loan and make distinctions between it and the 2007 loan. It would also clear up some misinformation in the records such as the characterization by Plaintiffs of the 2005 loan being a "negatively amortized loan." In point of fact, the evidence should show that was only one feature of the loan, a payment option which was elected by Plaintiffs. The 2005 loan also is important to understand the background and motivation of Plaintiffs for the 2007 loan ultimately agreed to by the Plaintiffs.

The documents about which this witness would testify are subject to objections by Plaintiffs and appear on pages 25 and 26 of the draft pretrial order as exhibits 68-88. In addition to providing relevant information to Plaintiffs' knowledge and experience, the witness will also serve to rebut factual testimony by Plaintiffs.

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 5

**Laura Scurko**. Laura Scurko is a senior attorney with Stern, Lavinthal, Frankenberg & Norgaard L.L.C., 101 Eisenhower Parkway, Roseland, New Jersey, whose name appears on pp. 15 and 17 of the final proposed pre-trial order. She is counsel in the parallel foreclosure proceeding who would be called to explain the nuances and background of the foreclosure action against the Plaintiffs and their "default" in that action. She has always loomed as a possible witness in the documents to and from Plaintiffs. However, based on discussions with Plaintiffs' counsel, Matthew Weisberg, Esq., it appears that he will stipulate as to all segments of the filing, service and default by Plaintiffs as well as the mortgage and note signed by the Plaintiffs and for which they are still obligated. Ms. Scurko's testimony would be relevant not only to authenticate the foreclosure documents and notices, but also the status of the litigation, i.e., default and the incompetent admissions of the allegations in the foreclosure complaint. As with all the witness to which he has objected, Mr. Weisberg has indicated he does not wish to depose Ms. Scurko. However, it is highly likely she will not be called.

**Financial Representatives, Accountants, Robert Cocco and Bally's Custodian.** These witnesses appear on pp. 15-17 of the draft pretrial

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 6

order.  All fall into the category of witnesses who would provide financial, income, and other information pertaining to documents or the lack thereof.  They would be mostly for rebuttal or impeachment testimonies, which are relevant for adverse inferences (failure to produce documents) or to demonstrate discrepancies, such as between the income figures reported to the mortgagees on Plaintiffs' 2008 loan application and the actual income earned, as reported on Plaintiffs' tax returns and possibly other documents – as well as other documents.

However, Plaintiffs' counsel, Matthew Weisberg, has indicated that if promises for documents have been made, which the undersigned maintains is the case, Plaintiffs shall supply Defendant with the promised documents during discovery, such as the 2007 tax returns.  This relates to calling Robert Cocco as a potential witness because Mr. Cocco, who is an attorney, but not one of record in this case.  Mr. Cocco was a participant in the discovery process and made certain promises and representations about documents.  For example, as an inducement for Defendant to end the deposition of Carl D'Argenzio, Mr. Cocco represented or verbally stipulated that his clients did not have any copies or evidence of documents which they said in their testimony they had sent to Countrywide in or

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 7

about July 2008 in connection with the 2008 loan application.  In addition to supplying promised documents, such as a completed copy of the 2007 tax return, Mr. Weisberg has indicated that we can stipulate to certain facts to avoid Mr. Cocco being called as a witness.  That should eliminate Mr. Cocco as one of the witnesses.  This concludes the lay witnesses to which Plaintiffs have raised objections.

      **Expert Witness:  Laura Burelli**.  In January 2012, following the decision by the Honorable Jerome Simandle which denied Defendant's motion for summary judgment, it became clear that expert testimony would be helpful to the fact finder and Defendant's case in this litigation.  This became evident from both the November 21, 2011 decision of the Honorable Jerome B. Simandle and the First Amended Complaint which was filed <u>after discovery</u> had closed and <u>after Defendant had made their motion for summary judgment</u>.

      Until January 19, 2012, the undersigned Defendant's counsel, correctly or incorrectly, had been laboring under the impression that the time period for choosing an expert witness had been suspended pending the summary judgment motion which was filed on April 29, 2011.  See Document # 29 which states in part "[t]he parties . . . do not <u>presently</u> intend to name trial experts."

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 8

(emphasis supplied).  To be sure, not until after Judge Simandle's decision did Defendant's counsel recognize the possible need for expert assistance.  It was not a case of neglect.  The circumstances surrounding the aforementioned First Amended Complaint and the decision by Judge Simandle, as well as the recently discovered evidence about Plaintiffs' having falsely reported income in connection with their 2008 Loan Application, made it apparent that such an expert would be helpful to clarify facts about the mortgage loan process and the mortgage banking industry.

To be more specific, although the motion to amend the complaint in March 2011 (Doc. #33) was made prior to the actual filing of the motion for summary judgment, the actual First Amended Complaint was not filed until more than two (2) weeks after summary judgment motion had been filed.  (Doc. #41) In the interim, Plaintiffs, without knowledge to Defendant's counsel, changed the First Amended Complaint in such a way that the New Jersey Consumer Fraud claim was broadened.  That is, Defendant's counsel did not realize the alteration or that it made the CFA claim more complex, *i.e.* from mere "misrepresentation claim" to a claim under almost all aspects of the CFA, even though it filed an answer.

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 9

The above time difference apparently gave Plaintiffs' counsel time to review the summary judgment papers and embellish or reconfigure the CFA claim. Examine and compare documents ## 33 (proposed First Amended Complaint), 36 (Summary Judgment Motion), 39 (Stipulation), 40 (Order) and 41 (Filed First Amended Complaint). As stated, embellishments to the Complaint were made without the prior knowledge or consent of Defendant's counsel. Moreover, Defendant's counsel misunderstood the issue involving Equal Credit Opportunity Act to be more limited to a discrimination statute, whereas it has been interpreted in the lower court cases cited by the U.S. District Court, as having much broader application. These factors serve to demonstrate that Defendant did not deliberately neglect the possibility of an expert.[1] Hence, on

---

[1] During a telephonic conference on January 19, 2012, which both counsel reminded the Honorable Joel Schneider about at a conference in chambers on February 23, 2012, the U.S. Magistrate indicated that an expert report had to be included in a motion seeking permission for the expert to testify, but that although the Court was not prejudging, it was not inclined to grant the motion. On January 19, 2012 some of the issues discussed herein were not in the forefront of this counsel's mind. For example, the Court indicated that both sides, in January 2011, indicated that "presently" they did not intend to name expert witnesses, which was true at the time. Defendants' counsel did not make the motion in the last month because of the unlikelihood of success and the cost factor of engaging an expert witness without prior permission, as well as his severe litigation schedule during that period of time.

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 10

January 13, 2012, Defendant's counsel designated an expert who could speak not only to issues pertaining to the Consumer Fraud Act claim but also the ECOA claim, including the notification of a withdrawn application to Plaintiffs which they deny having received. Furthermore, this case has become more complex because of newly discovered evidence produced by Plaintiffs after the decision by Judge Simandle was issued. This is important to show that there was no intentional rejection of the expert witness included in the proposed pre-trial order. It was something which evolved because of the circumstances – after the close of discovery.

As discussed, a review of the scheduling orders indicates that while the initial scheduling order in 2010 did set a deadline for expert witnesses for January 2011, there was an extension of factual discovery in January 2011 to March 31, 2011 and thereafter for an additional two week period. The amended scheduling order which provided same indicated that "at the present time" the parties did not expect to name expert witnesses. That, of course, was before the development cited above and at least, correctly or incorrectly, suggested to defense counsel that the period by which to designate a witness had been extended indefinitely. During the pre-trial conference Plaintiffs' counsel

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 11

indicated that if this Court were to allow witnesses over Plaintiffs' "lateness objections," he would not elect to take depositions of said witnesses. Given the perceived importance of these witnesses for the defense, this Court would be justified in its discretion to permit said lay and expert witnesses.

### THE CASE LAW IS FAVORABLE TO BANK OF AMERICA'S POSITION AND IT SHOULD BE ENTITLED TO SUBMIT AN EXPERT REPORT AND CALL THE EXPERT AND OTHER LAY WITNESSES

The relevant legal authority in this District is on Defendant's side in this case. While typically it is not favored by the courts to allow lay and expert witnesses when not disclosed during the time of pretrial discovery, there are exceptions depending on the circumstances. A case in point is in G.O.D., Inc. v. USF Corporation, Inc., 2007 WL 2904198 *3 (D.N.J.) (October 2, 2007). In that case, United States Magistrate Judge Ester Salas denied Plaintiff's motion to preclude ten of witnesses identified by defendant in its Final Pretrial Order Witness List. In so ruling, the court found that plaintiff first learned of the witnesses during the final pretrial conference and then the names of the witnesses were put on the order. Id. In addition, the court noted that during the pretrial conference plaintiff's counsel raised no objections to defendant USF's witnesses when asked by the court. Id.

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 12

Defendant USF in G.O.D., Inc., supra had relied on Lentz v. Mason, 32 F. Supp. 2d 733, 740-741 (D.N.J. 1999), where the court found that defendants had notice of plaintiff's plan to call the witness at the time of the filing of the final pretrial order, even though the witness had not been disclosed prior to that date. Id. The Lentz court, assessing the Nicholas test discussed below, noted that since Defendants had ample time to depose the witness and perform investigation, they could not have suffered any prejudice from Plaintiff's failure to identify the witness in pretrial discovery. Id.

The Third Circuit has established four factors that the Court should balance before precluding expert witnesses: (1) the prejudice to the party against whom the excluded witness would have testified; (2) the ability of the party to cure the prejudice; (3) the extent to which permitting the testimony would disrupt the orderly and efficient trial of the case, and (4) bad faith or willfulness in failing to comply with the Court's order. See Nicholas v. Pennsylvania State University, 227 F. 3d 133, 148 (3d Cir. 2000); see also Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985), aff'd, 482 U.S. 656 (1987). "The importance of the testimony should also be

Zeichner Ellman & Krause llp

Honorable Joel Schneider, U.S.M.J.
U.S. District Court
March 2, 2012
Page 13

considered and the exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." (emphasis supplied). See Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997) (citing Meyers, 559 F.2d at 904); see also Bailey v. Viacom, Inc., 435 Fed. Appx. 85, 89 (Pa. App. Ct.) (June 16, 2011).

   In this case, Plaintiffs' counsel was made aware of the expert witness on January 13, 2012 and directly afterwards the lay witnesses. See Exhibit 1 hereto. Plaintiff's counsel also stated to the court that he did not intend to depose the expert or lay witnesses or conduct any further investigations. Based upon the rationale of the G.O.D. case, it is clear that allowing the expert witness would constitute harmless error under the Meyers test, supra, when the witness was not disclosed during pretrial discovery. There is no prejudice to Plaintiffs or bad faith on the part of Defendant. The proposed testimony is important and there is time before a trial to do so.

   Respectfully yours,

   William T. Marshall, Jr.

WTM:tb
cc:   Matthew B. Weisberg, Esq. (by e-mail and regular mail)

Exhibit

1

# ZEICHNER ELLMAN & KRAUSE LLP

103 EISENHOWER PARKWAY
ROSELAND, NEW JERSEY 07068
(973) 618-9100
FAX: (973) 364-9960
www.zeklaw.com

575 LEXINGTON AVENUE
NEW YORK, NY 10022
(212) 223-0400
FAX: (212) 753-0396

-------

35 MASON STREET
GREENWICH, CT 06830
(203) 622-0900
FAX: (203) 862-9889

WILLIAM T. MARSHALL, JR.
wmarshall@zeklaw.com

January 13, 2012

**BY EMAIL & REGULAR MAIL**

Matthew B. Weisberg, Esq.
Prochniak Weisberg, P.C.
7 South Morton Avenue
Morton, PA 19070

> Re:   Carl D'Argenzio and Barbara D'Argenzio
>        v. Bank of America Corporation, f/k/a
>        Countrywide Bank, FSB ("Bank of America")
>        Civil Action No. 09-5604 (JBS, JS)
>        Our File No. 82978.053

Dear Mr. Weisberg:

This is to advise you that we have retained the services of Laura J. Borrelli as an expert to testify at the trial of this matter. Ms. Borrelli will concentrate on the 2005 loan, the 2007 loan and the 2008 application in a variety of areas relative to the application, loan processing, underwriting and compliance matters, including industry standards relating to same. Her testimony will touch upon circumstances underlying both the Consumer Fraud Act claim and the alleged ECOA violations.

We are attaching herewith a copy of her *Curriculum Vitae* and case listing, as well as her fee schedule. We expect to have a report within thirty (30) days from the date of the now scheduled Pretrial Conference and shall modify the Rule 26 Disclosure as appropriate.

Very truly yours,

William T. Marshall, Jr.

WTM:kad
Enclosures