```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

|   |   |
|---|---|
| CARL D'ARGENZIO AND BARBARA D'ARGENZIO,         Plaintiffs,     v.  BANK OF AMERICA CORPORATION f/k/a COUNTRYWIDE BANK, FSB,         Defendant. | HON. JEROME B. SIMANDLE  Civil No. 09-5604 (JBS/JS)   **OPINION** |

APPEARANCES:

Matthew Benjamin Weisberg, Esq. (argued)
PROCHNIAK WEISBERG, PC
7 South Morton Avenue
Morton, PA 19070
    Attorney for Plaintiffs Carl D'Argenzio and Barbara
    D'Argenzio

William T. Marshall, Jr., Esq. (argued)
Kerry A. Duffy, Esq.
ZEICHER ELLMAN & KRAUSE LLP
103 Eisenhower Parkway
Roseland, NJ 07068
    Attorney for Defendant Bank of America Corporation f/k/a
    Countrywide Bank, FSB

**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

This matter is before the Court on the motion of Defendant Bank of America Corporation f/k/a Countrywide Bank, FSB ("Defendant" or "Countrywide") for reconsideration of this court's order and decision denying Defendant's motion for summary judgment. [Docket Item 59.] Plaintiffs Carl D'Argenzio and Barbara D'Argenzio ("Plaintiffs") oppose Defendant's motion for

reconsideration and argue that the court's denial of summary judgment was proper.

The court heard oral argument on April 27, 2012. For the reasons discussed herein, the court will grant the Defendant's motion for reconsideration. The court will vacate its denial of summary judgment as to the Plaintiffs' New Jersey Consumer Fraud Act claim and enter summary judgment in favor of Defendant. However, the court will again deny summary judgment as to the Plaintiffs' claim pursuant to the Equal Credit Opportunity Act, without prejudice.

## II. BACKGROUND

The procedural history and underlying facts of this case are described set forth in the court's November 21, 2011 opinion and are incorporated herein.

### A. Court's November 21, 2011 Opinion

The court issued an opinion denying the Defendant's motion for summary judgment and held the Plaintiffs' claims alleging violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("NJCFA"), and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. ("ECOA") remained viable. In addressing the NJCFA claim, the court found there were genuine issues of material fact regarding the completeness of the July 2008 loan application and whether the Defendant engaged in unlawful conduct by allegedly inducing the Plaintiffs to enter into the 2007 loan

2

agreement and misrepresenting to the Plaintiffs that the 2007 loan would be eligible for refinancing at a lower interest rate in three to four months as long as Plaintiff Carl D'Argenzio improved his credit.  Giving all favorable inferences to the Plaintiffs, the court concluded a rational jury could find that the Plaintiffs were fraudulently induced to enter into the 2007 loan agreement and suffered ascertainable loss as a result of the Defendant's unlawful conduct.

The court also found that there were genuine issues of material fact which prevented summary judgment as to the ECOA claim.  In particular, the Defendant maintained that the Plaintiffs withdrew their loan application in September 2008 while the Plaintiffs denied withdrawing their loan application.  The Defendant argued that the loan application was unsigned and incomplete.  The Plaintiffs maintained that the application was complete because they submitted all the requested documents to the Defendant multiple times and were vigilant in communicating with the Defendant.  As a result of these genuine factual disputes and giving all favorable inferences to the Plaintiffs as the nonmoving party, the court held a rational jury could conclude that the July 2008 loan application was complete and was cancelled by the Defendant without sending any notice to the Plaintiffs in violation of the ECOA.

**B. Initial Motion for Reconsideration**

In its initial motion, the Defendant argues reconsideration is appropriate because the court overlooked three key documents in rendering its opinion:  the July 2, 2008 Notice of Incompleteness; the September 8, 2008 Withdrawal Letter; and the October 23, 2007 Loan Commitment.  The Notice of Incompleteness was attached to the Declaration of William T. Marshall, Jr. in support of the Defendant's summary judgment motion and the Withdrawal Letter and 2007 Loan Commitment were attached to the Reply Declaration of William T. Marshall, Jr. in response to the Plaintiffs' opposition.

First, the Defendant maintains that the Notice of Incompleteness and Withdrawal Letter evidence the Defendant's compliance with the ECOA and support a finding that no adverse action was taken by the Defendant in violation of the ECOA.  Second, the Defendant argues that the 2007 Loan Commitment refutes Plaintiffs' claims that they were promised an automatic refinancing by the Defendant and therefore the Plaintiffs' NJCFA claim should have been dismissed.  In addition, the Defendant raises a new argument for the first time on reconsideration that Plaintiffs' ECOA claim should be dismissed because it is barred by the statute of limitations.

The Plaintiffs oppose this motion for reconsideration.  The Plaintiffs maintain that summary judgment was properly denied because there are genuine issues of material fact.  The

Plaintiffs argue that the Notice of Incompleteness and the Withdrawal Letter are not dispositive and rebutted by the Plaintiffs' deposition testimony.  The Plaintiffs further argue that the language of the 2007 Loan Commitment does not foreclose their NJCFA claim because the Plaintiffs have sufficiently alleged an oral commitment to refinance.  Finally, Plaintiffs contest Defendant's statute of limitations argument and maintain the Defendant waived any statute of limitations defense by consenting to the Plaintiffs' amended complaint, wherein the ECOA claim was first raised.

### C. Motion to Supplement the Record

After the initial motion for reconsideration was fully briefed, the Defendant filed a motion for leave to supplement the record which this court granted.  The Plaintiffs belatedly disclosed a copy of their 2008 income tax returns on January 13, 2012, after briefing on the reconsideration motion was complete, and after Defendant had repeatedly demanded production.

The Defendant argues that the tax returns, when viewed in conjunction with Plaintiffs' 2008 Uniform Residential Loan Application ("URLA") for an FHA loan, to refinance the 2007 loan, confirms that the 2008 URLA contained materially false and inflated income information.  These tax returns, according to the Defendant, offer additional evidence to confirm that the Plaintiffs' efforts to refinance were futile, and that Plaintiffs

5

had overstated their income by a factor of ten when compared with their true income.[1]

The Plaintiffs did not oppose the Defendant's motion to supplement the record; however, the Plaintiffs contend that the addition of the 2008 tax returns into evidence should not change the court's previous denial of summary judgment.  The Plaintiffs contend that Carl D'Argenzio's deposition testimony is evidence that the Plaintiffs were promised the refinancing to the lower interest rate loan without the requirement of completing more loan application paperwork.  Therefore, since the 2008 tax returns reflect the Plaintiffs' financial position after the 2007 loan and the alleged promise to refinance was made, the Plaintiffs argue these tax returns are irrelevant.

The court granted the motion for reconsideration in order to hear reargument in light of this new evidence.

### III.  DISCUSSION

#### A.  Standard of Review

Local Civil Rule 7.1(i) governs the Court's review of Defendant's motion for reconsideration.  Rule 7.1(i) requires the moving party to set forth the factual matters or controlling

---

[1] Furthermore, Defendant points out that Plaintiffs have still not disclosed any copy of their 2007 tax returns despite placing their 2007 income directly into dispute.  This case was filed within 18 months of the April 15, 2008 filing deadline for the 2007 income tax returns, yet Plaintiffs claim to be unable to locate a copy of same.

legal authorities it believes the Court overlooked when rendering its initial decision.  L. Civ. R. 7.1(i).  Whether to grant a motion for reconsideration is a matter within the Court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked.  See DeLong v. Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981); see also Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993).  To prevail on a motion for reconsideration, the movant must show:

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered."  P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (internal quotations and citations omitted).

   The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly.  United States v. Jones, 158 F.R.D. 309, 314 (D.N.J.1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986).  In the

present circumstances, where the Court has permitted the original movant to supplement the record with important new evidence (the 2008 tax returns) that was previously withheld by Plaintiffs, justice requires a more searching review of the original motion to see whether the result must be changed.

### B. Analysis

The Defendant argues reconsideration is appropriate because the court overlooked three documents submitted by the Defendant in support of its motion for summary judgment.  Specifically, the Defendant maintains that the court overlooked: the July 2, 2008 Notice of Incompleteness, the September 8, 2008 Withdrawal Letter and the October 23, 2007 Loan Commitment.  The Notice of Incompleteness was attached to the Declaration of William T. Marshall, Jr. in support of the Defendant's summary judgment motion and the Withdrawal Letter and 2007 Loan Commitment were attached to the Reply Declaration of William T. Marshall, Jr. in response to the Plaintiffs' opposition.

With regards to the Notice of Incompleteness, the court did not overlook this document as it was addressed expressly in the court's opinion.  The court stated:

> A Notice of Incompleteness was sent to the Plaintiffs on July 2, 2008, regarding their 2008 loan application. (Marshall Decl. Ex. 14.)  The Notice of Incompleteness indicates that six items were missing from the Plaintiffs' loan application including: Bank statements for the previous 2 months, most recent pay stub, 2006 and 2007 income tax returns, 2006 and 2007 W-2 forms, proof of homeowners insurance and signed disclosures.  It is

> disputed whether the Plaintiffs sent Countrywide the requested information. Plaintiff Barbara D'Argenzio stated that she watched her husband, Carl, fax the requested documents to Countrywide several times. (BDA 72:15-16.) Plaintiff Carl D'Argenzio states that he sent Countrywide all the documents Countrywide requested numerous times by FedEx, email or fax. (CDA 110:23-111:23.) Plaintiff Carl D'Argenzio stated that he called Countrywide numerous times to inquire about why the 2008 loan application had not been processed and every time he was told that Countrywide was missing a document, despite Plaintiff Carl D'Argenzio having sent the document multiple times. (CDA 111: 6-112:1.) Countrywide denies receiving any of the requested documents from the Plaintiffs.

[Docket Item 56, Opinion of the Court, at 6-7.] In addressing the Notice of Incompleteness, the court recognized the genuine dispute between the parties regarding the status of the July 2008 loan application. While the court did not give the Notice of Incompleteness the dispositive weight the Defendant argued was appropriate, the Court did address this document expressly in its opinion and the document was not overlooked. Therefore, reconsideration with regard to the Notice of Incompleteness is inappropriate.

However, the court did not consider the Withdrawal Letter and 2007 Loan Commitment in deciding the Defendant's motion for summary judgment. The court expressly stated in its opinion that it was not considering these documents because they were not attached by either party as part of the record before the court. [Docket Item 56, Opinion of the Court at 8 n.3 and 13.] In its motion for reconsideration, the Defendant maintains that both

documents were attached in the Defendant's reply submission. Specifically, both documents were attached as exhibits to the Reply Declaration of William T. Marshall, Jr.  The Defendant does not dispute that it did not attach these documents to its initial moving brief.

Courts have held that "a moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief."  D'Alessandro v. Bugler Tobacco Co., No. 05-5051, 2007 U.S. Dist. LEXIS 2735, *5 (D.N.J. Jan. 12, 2007)(citing International Raw Material, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n.11 (3d Cir. 1992)). Further, "a moving party cannot establish its entitlement to summary judgment by pointing to evidence or a lack of evidence in a reply brief, as opposed to a principal brief."  Harbour Cove Marine Services v. Rabinowitz, No. 02-1695, 2005 U.S. Dist. LEXIS 34835, *14 (D.N.J. May 3, 2005).

In this case, the Defendant relied on both the Withdrawal Letter and the 2007 Loan Commitment in its initial moving brief but failed to attach these key exhibits to its initial moving papers.  Instead, the Defendant belatedly presented these documents to the court for the first time as part of its reply brief and attached them as exhibits to the Reply Declaration of William T. Marshall, Jr.  Since these documents were not properly attached to the Defendant's initial moving papers and no sur-

replies are permitted, the Plaintiff did not have an opportunity to respond to these new factual materials.[2]

However, in light of the newly disclosed evidence and the Plaintiffs' opportunity to address the Withdrawal Letter and 2007 Loan Commitment document in its reconsideration brief, the court finds it appropriate to consider these documents on reconsideration.  Therefore, while the Defendant did not follow the appropriate procedure in presenting these documents in its motion for summary judgment, this will not be a bar to the court's consideration of these documents in deciding the instant motion.

### 1. New Jersey Consumer Fraud Act Claim

In order to prevail on a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a plaintiff must satisfy three elements. The Plaintiff must demonstrate (1) unlawful conduct on the part of the Defendant; (2) an ascertainable loss on the part of the Plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  N.J.S.A. § 56:8-19; Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).

In this case, the production of the 2007 Loan Commitment and the 2008 tax returns are significant to the court's analysis of the NJCFA claim and after reviewing these documents and the

---

[2] Indeed, the Defendant vehemently opposed Plaintiff's motion to file a sur-reply. [Docket Item 52.]  The Plaintiff's motion was subsequently denied. [Docket Item 54.]

11

parties' arguments, the court will grant the Defendant summary judgment as to this claim.

First, the language of the 2007 loan commitment is clear and did not provide for an automatic refinancing to a 6% interest rate after three months. The Plaintiffs had an opportunity to read the loan commitment and if this allegedly crucial term was not included therein, they should not have signed the document and should have alerted the Defendant to its absence. Further, the 2007 loan commitment has an integration clause which states "this commitment supersedes all previous agreements or commitment letters concerning the mortgage loan requested in your application." (Def.'s Ex. A, Reply Declaration of William T. Marshall, Ex. 20 at ¶ F.2). This language makes it clear that any prior agreements, oral or written, which are not incorporated in the 2007 Loan Commitment are superseded. Therefore, upon the now completed record, no reasonable jury could find the Defendant fraudulently induced the Plaintiffs to enter into a loan agreement when it fully disclosed the terms of said agreement prior to its execution.

Second, and more important, the 2008 tax returns disclose that any harm suffered by the Plaintiffs after executing the 2007 Loan Commitment was not caused by the Defendant's alleged fraudulent inducement. It is now clear that Plaintiffs' 2008 loan application, assuming Plaintiffs actually signed and

12

submitted it (which Defendant contests), overstated their true income <u>by a factor of ten</u>.  Plaintiffs' 2008 URLA claimed monthly income of $13,916 (annual income of $166,992), but their true annual income for 2008 was only $15,786.00.  These tax returns clearly indicate that the Plaintiffs did not have sufficient income to refinance in 2008 and disclosed that the Plaintiffs would not have had the financial ability to make their mortgage payments under the more favorable lower interest loan had they received it.[3]

In terms of the NJCFA claim, if the Plaintiffs were not financially able to refinance in 2008, then the alleged oral promise to refinance in 2008 cannot be said to be the cause of Plaintiffs' ascertainable loss.  The alleged oral promise to refinance was conditioned upon the improvement of Carl D'Argenzio's credit and the 2008 tax returns are evidence that this prerequisite to refinancing was not met because D'Argenzio's financial condition in fact markedly deteriorated in 2008.  In addition, the amount of income reported in 2008 indicates that even with a refinance, the Plaintiffs would not have been able to

---

[3] On an annual income of $15,786.00, and no other disclosed liquid assets from which to make payment, there can be no dispute that Plaintiffs could have ever qualified for the 2008 loan. Plaintiffs sought to obtain a loan for $229,415, upon which their monthly payment, again accepting Plaintiffs' allegations as true, would have been $1,494.42.  See Pl. Ans. to Int. No. 2 [Docket Item 36-11].  Their annual loan payments for principal and interest alone would have been $17,933.04, which sum would have exceeded their <u>entire</u> adjusted gross income for 2008.

13

make payments on their mortgage.  Plaintiffs have pointed to no assets, such as savings or investments, from which they could have fulfilled such loan obligations.  Consequently, the Plaintiffs would have suffered the same harm, namely going into foreclosure, had they received the lower interest rate loan.

It has also become apparent that Plaintiff Carl D'Argenzio gave false testimony at his deposition in this case.  At deposition, when asked for Plaintiffs' approximate gross income for calendar year 2008, Carl D'Argenzio stated that it was between "$5,000 to $10,000 a month," which would translate to an annualized income between $60,000 and $120,000, a range four to eight times greater than his actual adjusted gross income for 2008 of $15,786.  (See Docket Item 73-2.)  To this day, neither Plaintiffs nor their attorney have addressed the glaring overstatements of 2008 income in the 2008 loan application and in deposition testimony, so the fact that Plaintiffs falsely stated their 2008 income and that Carl D'Argenzio also falsely testified about the amount of their 2008 income, is not disputed.

In short, Plaintiffs themselves attempted to deceive Countrywide about the true amount of their income at the time they applied for the 2008 loan.  It is undisputed that their financial situation had significantly deteriorated compared with the income they claimed for 2007, and that Plaintiffs did not fulfill even their own version of the bank's promise of a 2008

14

refinancing if their credit condition improved.  For all these reasons, it is beyond doubt that Plaintiffs were not defrauded and that no reasonable jury could find in their favor on this point.

Furthermore, no reasonable jury could find that the Plaintiffs' harm was caused by the Defendant's allegedly fraudulent conduct.  Without proof of causation, the Plaintiffs' NJCFA claim must fail.  Accordingly, summary judgment is appropriate and the Plaintiffs' NJCFA claim will be dismissed.

### 2. Statute of Limitations

In its motion for reconsideration, the Defendant belatedly raised a statute of limitations defense and argues that the Plaintiffs' ECOA claim filed in their Amended Complaint was filed outside the two year limitation period.  See 15 U.S.C. 1691e(f)(providing that no action under the ECOA "shall be brought later than two years from the date of the occurrence of the violation").

Motions for reconsideration "are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers." Bowers v. NCAA, 130 F. Supp. 2d 610, 613 (D.N.J. 2001).  Generally, a court should refrain from addressing new legal arguments raised for the first time on a motion for reconsideration.

However, during oral argument, the court and the parties

agreed that a speedy resolution to this issue would be advantageous. The parties maintained that they had fully briefed the issue on reconsideration and the court allowed the parties to address the statute of limitations defense at oral argument. After reviewing the arguments made by the parties, the court finds that the ECOA claim relates back to the filing of the original pleading in this matter and therefore was raised within the requisite limitations period.

> Rule 15(c) of the Federal Rules of Civil Procedure provides:
>
> c) Relation Back of Amendments.
>
> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.

Fed. R. Civ. P. 15(c)(1)(B).

In this case, the original pleading asserted the following causes of action: Truth-in-Lending Act violation; New Jersey Consumer Fraud Act violation; and Fraud/Fraudulent Misrepresentation. [Docket Item 1.] All three of these causes of action arose out of the 2007 refinance, the alleged oral promise to refinance for a lower interest rate loan in three to four months, the Plaintiffs' subsequent inability to refinance and the July 2008 refinance application.

Plaintiffs' ECOA claim which was alleged for the first time

in their Amended Complaint arises out of the same transactions which formed the basis of their original pleading. Indeed, the same facts which support their ECOA claim were adequately alleged in their initial pleading. While the ECOA claim was not alleged as a cause of action in the original complaint, it clearly arises out of the same transaction or occurrence set out in the original pleading.

Therefore, the court finds that the Plaintiffs' ECOA claim relates back to the date of the Plaintiffs' original pleading which was November 4, 2009. [Docket Item 1.] This falls well within the two year limitations period which applies to claims alleging violations of the ECOA. Accordingly, the court finds that the Plaintiffs' ECOA claim was timely filed and not barred by the statute of limitations.

### 3. ECOA Claim

Finally, the production of the Withdrawal Letter does not change the court's opinion finding that a genuine dispute exists as to the processing and withdrawal or cancellation of Plaintiffs' application to refinance their mortgage. While the Plaintiffs have not produced documentary evidence to support their claims, the Plaintiffs testified under oath at their deposition that they submitted all the required paperwork to the Defendant to complete their refinancing package and did not withdraw their 2008 application. Their testimony creates a

17

genuine issue of material fact. Contrary to the Defendant's argument, there is no requirement under Rule 56 for a party to support their contentions with documentary evidence as opposed to deposition testimony. In addition, there is evidence that the Plaintiffs received a phone call from Benjamin Brown, an employee of Countrywide, who left a message on the Plaintiffs' answering machine stating that the loan application was accepted. This creates a genuine issue of material fact as to whether the Plaintiffs submitted a completed loan application.

Further, the Defendant has produced no evidence that the Withdrawal letter was ever received by the Plaintiffs. Without proof of receipt, Carl D'Argenzio's deposition testimony and the Countrywide voicemail create a genuine issue of material fact as to whether the Defendant complied with the statutory notice requirements set forth in the ECOA.

Whether Plaintiffs' evidence is more persuasive than Defendant's is a matter for trial to be weighed and determined by the fact finder. Therefore, summary judgment is not appropriate as to this claim and will be denied.[4]

---

[4] The parties have not addressed, and the court has not decided, whether Plaintiffs' unclean hands in falsely claiming $13,916 monthly income for 2008 in their 2008 URLA when their true _annual_ income for 2008 was only $15,786.00, is a bar to Plaintiffs' recovery on their ECOA claim. Generally, with respect to a federal statute redressing discrimination, after-acquired evidence of wrongdoing will not preclude liability for a statutory violation, McKennon v. Nashville Banner Publish. Co., 513 U.S. 352, 356-57 (1995)(holding that after-acquired evidence

**IV.  CONCLUSION**

For the reasons discussed herein, the court will grant the Defendant's motion for reconsideration.  In light of the new evidence of Plaintiffs' 2008 tax returns, the court finds summary judgment should be granted as to the Plaintiffs' New Jersey Consumer Fraud Act claim and therefore this claim will be dismissed.  However, the court will again deny summary judgment as to the Equal Credit Opportunity Act claim because there remains a genuine issue of material fact whether the Plaintiffs received the notice required under the statute prior to the cancellation of their refinance application.

The accompanying Order will be entered and the case will be set for trial on the remaining ECOA claim.

| | |
|---|---|
| **July 9, 2012** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE<br>Chief U.S. District Judge |

---

of wrongdoing by an employee does not preclude employer liability for violating the Age Discrimination in Employment Act).  This precept has been applied by the Fifth Circuit in an ECOA case, relying on McKennon.  Moore v. United States Dep't of Agr., 55 F.3d 991 (5th Cir. 1995)(holding that after-acquired evidence of a loan applicant's poor credit history does not bar liability for a viable ECOA claim); see also Ramirez v. Greenpoint Mortgage Funding Inc., 268 F.R.D. 627, 636-37 (N.D. Ca. 2010)(noting that unclean hands defense to liability under ECOA is unavailable if based on after-acquired evidence, citing Moore).  Cases seem to be in agreement, however, with the principle that inequitable conduct by a plaintiff, revealed in after-acquired evidence, will be considered in assessing equitable relief or damages, if any. McKennon, 513 U.S. at 361, Moore, 55 F.3d at 995-96; Ramirez, 268 F.R.D. at 637.  In any event, this issue remains for determination at trial, if necessary.